Edwin G. DOMKE, Jr., Respondent,

v.

**FARMERS & MECHANICS SAVINGS BANK, Defendant,**

**North Central Life Insurance Company, Appellant.**

No. C9–84–927.

Court of Appeals of Minnesota.

March 12, 1985.

William L. Orr, Minneapolis, for respondent.

David P. Pearson, William D. Hittler, Winthrop, Weinstine & Sexton, St. Paul, for appellant.

Heard, considered and decided by POPOVICH, C.J., and NIERENGARTEN and RANDALL, JJ.

## OPINION

RANDALL, Judge.

Respondent, the insured under a policy of mortgage disability insurance, applied for benefits after he was disabled from employment due to hearing loss. The insurer (North Central) denied coverage. Respondent brought this action, and the trial court awarded respondent five years of benefits. North Central appealed. We affirm in part, reverse in part, and remand for entry of judgment for reduced benefits.

## FACTS

On April 16, 1975, respondent submitted an application for mortgage disability insurance to cover the mortgage on his house. At the time he submitted the application, respondent had before him a brochure advertising the insurance which he had received from F & M, which held the mortgage on his home. The brochure stated that the exclusions under the policy were limited to "Pregnancy, intentionally self-inflicted injury, disability caused by war, or incurred while in the armed forces."

The application asked whether respondent knew of any "impairment or deformity" existing in his health or physical condition and whether respondent had consulted any doctor within the last three years. Respondent answered "yes" to both those questions, as well as to the question asking whether he had ever been treated for any of a list of diseases. He then supplied "particulars," stating, in response to the first, "slight hearing loss;" in response to the second, "Physical—Dr. James R. Fox—Annual;" and, to the last, "Arthritis—Bursitis—Dr. James R. Fox—1972." North Central did not request more complete information from respondent or inquire of either of the two physicians respondent had named on the application about respondent's hearing loss.

Respondent had consulted the Mayo Clinic about his hearing problem in 1965, 1966, and 1967, and had worn a hearing aid since that time. Respondent testified that he did not supply the name of his attending physician at the Mayo Clinic on the application because he could not remember it. In October 1966 respondent was given an audiogram which showed an average hearing loss of 37 decibels. In June 1975, another audiogram revealed an average hearing loss of 43 decibels. According to expert testimony, any hearing loss below 40 decibels is considered "slight." Hearing loss between 40–55 decibels is considered "mild," and a hearing loss of 55 to 70 decibels is considered a marked handicap.

North Central issued a four page long detailed Certificate of Insurance to respondent. The certificate stated that it summarized the principal provisions of the master policy. It did not, however, contain language excluding coverage for pre-existing conditions (which the master policy did contain). The promotional literature also did not mention any exclusion for pre-existing conditions. The certificate did indicate that its terms were subject to the provisions of

the master policy, a copy of which was in the possession of F & M. F & M did not disseminate copies of the master policy to insureds, only the Certificate of Insurance. The Certificate of Insurance did not contain a detailed statement that there were exceptions and exclusions in the master policy over and above the wording in the certificate. The policy contained a maximum coverage period of five years.

In January 1977, respondent resigned his employment because of his hearing loss, related vertigo problems, and arthritis. The parties have stipulated that respondent has been "disabled" within the meaning of the policy since April 1977. Respondent applied for benefits and North Central denied the claim. In June 1979 respondent and his wife sold their home and paid off their mortgage.

### ISSUES

1. Did the trial court err in finding no false statements in respondent's application which materially affected either the acceptance of the risk or the hazard assumed by the insurer?

2. May the insurer rely on the language in the master policy precluding coverage for disabilities resulting from pre-existing conditions in the absence of any specific notice to insureds?

3. Did the trial court err in awarding respondent five years' worth of mortgage disability benefits?

### ANALYSIS

#### I.

*False statements in application*

■ Minn.Stat. § 62A.06, subd. 3 (1982) provides that

The falsity of any statement in the application for any policy covered by sections 62A.01 to 62A.09 hereof, may not bar the right to recovery thereunder unless such false statement materially affected either the acceptance of the risk or the hazard assumed by the insurer.

Appellant contends that respondent materially misrepresented his hearing condition on the application by failing to list the physicians who treated him at Mayo and by describing his hearing loss as "slight." The trial court, however, found as a fact that there was no material misrepresentation by respondent, since respondent's description of his hearing loss as "slight" was the one used by doctors at Mayo in the mid-60's, and since his failure to list the name of his doctor at Mayo was due simply to his inability to remember. Findings of fact of the trial court may not be disturbed unless they are clearly erroneous. Rule 52.01, Minn.R.Civ.P. There is evidence in the record to support the court's finding; therefore, we do not disturb it.

■ Further, even if respondent's statements in his application could be construed as false, support for the position that they did not affect either the acceptance of the risk or the hazard assumed comes from the insurer's failure to inquire or investigate further before issuing coverage. While the insurer did not have the name of the physician who treated respondent for hearing loss, it did have the name of respondent's family physician and the name of a physician who had given respondent an annual physical. It did not ask either of those physicians any questions about respondent's hearing loss, nor did it ask respondent to supply the name of the treating physician before it took action on the application. An insurer's failure to inquire when a basis for inquiry is set out on the application may constitute a waiver of the right to use the nondisclosure as a basis for denying coverage. *Couch on Insurance Law 2d,* § 38.70. Respondent's application clearly set out a basis for inquiry.

#### II.

*Master policy language:*

The trial court found that the language in the Certificate of Insurance issued to respondent should constitute the contract between the parties. The certificate did not include any reference to pre-existing

conditions; the master policy did. Appellant argues that the certificate stated it was subject to the terms of the master policy and that respondent was familiar enough with insurance contracts to know that. The language of the master contract should, therefore, be controlling, appellant argues.

Respondent himself testified that he knew the *brochure* sent him by F & M was only advertising. He thought, however, that all the essential aspects of the policy's coverage were described in the *certificate* and that he could rely on it. The certificate itself stated that it summarized the "principal provisions" of the master policy.

■ Minn.Stat. § 62B.06, subd. 2 (1982) provides that

> Each individual * * * group certificate of * * * credit, accident and health insurance shall * * * set forth * * * a description of the amount, term and coverage *including any exceptions, limitations and restrictions * * *.*

(Emphasis supplied.) The exclusion of pre-existing conditions from coverage is clearly an exception, limitation, or restriction. Since it was not set forth in the certificate issued to respondent, appellant may not rely upon it to defeat respondent's claim.

### III

*Damages:*

The trial court awarded five years' worth of benefits to respondent, even though he sold the house after two years and two months.

■ The certificate of insurance issued to respondent states that the insurance terminates upon discharge of the indebtedness or voluntary transfer of all the insured's interest in the loan security. Domke sold the house and paid off a mortgage approximately twenty-six months after denial by insurer of his claim for benefits. As a practical matter, once an insured has no more mortgage payments to make, the need for mortgage disability payments ceases. The trial court's finding that respondent's decision to sell the house and

move to Arizona was not caused by appellant's denial of benefits was supported by the record. Respondent was not entitled to benefits after he sold his house, but he was entitled to benefits during the time he was making the mortgage payments. We reverse the award of five years' worth of benefits and remand for the entry of an award of two years and two months' worth of benefits.

### DECISION

Trial court did not err in finding that respondent made no misrepresentations or false statements in his application. The insurer could not rely upon the master policy to deny coverage because respondent's disability resulted from a pre-existing condition. The Certificate of Insurance supplied to insured contained no such exclusion or exemption. The trial court erred in awarding benefits for the full policy period of five years; the provable damages were during the twenty-six months of actual ownership.

Affirmed in part, reversed in part, and remanded for entry of judgment for damages in accordance with this opinion.