William Ray GAGON, Plaintiff and Appellant,

v.

STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, a/k/a State Farm Insurance Companies, Defendant and Respondent.

No. 860137–CA.

Court of Appeals of Utah.

Dec. 18, 1987.

John D. Parken (argued), Marcella L. Keck, Dart, Adamson & Parken, Salt Lake City, for plaintiff and appellant.

Paul Belnap (argued), Strong & Hanni, Salt Lake City, for defendant and respondent.

Before GREENWOOD, BILLINGS and BENCH, JJ.

## OPINION

GREENWOOD, Judge.

Plaintiff, William Ray Gagon, brought this action against defendant, State Farm Mutual Automobile Insurance Company (State Farm), for payment of his insurance claim and for alleged bad faith refusal to pay his claim. Plaintiff appeals from the trial court's directed verdict against him on the bad faith issue. We reverse and remand.

On September 17, 1983, plaintiff was driving his 1979 Fiat Spider when a metal object fell out of the back of a pickup truck he was following and struck the underside of his car. Plaintiff stopped his car and noted that the plastic spoiler under the front grill had been broken, but he could see no oil or other evidence of damage to the car. Plaintiff then restarted the car and drove about three miles. While driving, he noticed that the car lacked power and that he was unable to drive faster than forty-five or fifty miles per hour. Towards the end of the three miles, he observed that the oil light was on. He stopped the car, tried to push it and briefly attempted to restart it. When the car would not start, plaintiff had it towed to Steve Harris Im-

ports where inspection revealed that the oil pump was broken. Because the oil pump stopped functioning, the engine was damaged due to loss of lubrication, costing $1,517.99 to repair.

Plaintiff reported the incident to State Farm on September 19, 1983. On September 23, State Farm's appraiser examined the vehicle and prepared a damage estimate indicating that State Farm would only cover the external damage to the car and not the internal damage due to loss of lubrication. On October 5, 1983, plaintiff went to State Farm's office and signed a statement explaining the circumstances of the incident. On October 12, 1983, State Farm's claims committee determined that plaintiff's claim would be denied "for internal repairs to the engine because of mechanical failure—wear and tear." On October 18, 1983, State Farm informed plaintiff of its decision to deny coverage for internal repairs and allow coverage for only the external damage. In December 1983, plaintiff initiated this action alleging that State Farm's refusal to pay his claim was in bad faith.

On the first day of trial, the parties stipulated that the case would be tried on the bad faith issue, and if the jury found bad faith, plaintiff could then submit evidence of punitive damages. On the second day of trial, the court disallowed plaintiff's evidence of attorney fees with the proviso that he would reconsider the admissibility of attorney fees if the jury found bad faith. After the parties had presented their evidence, both parties moved for a directed verdict. The trial judge granted State Farm's motion on the issue of whether State Farm acted in bad faith in refusing to pay plaintiff's insurance claim and denied plaintiff's motion regarding coverage under the policy for engine damage. The judge then allowed the jury to determine whether plaintiff was entitled to all the damages resulting from the accident. The jury awarded plaintiff $1,517.99, less plaintiff's insurance deductible of $200, plus ten percent interest from September 17, 1983. Plaintiff appeals claiming that the trial court erred in granting State Farm's motion for a directed verdict on the bad faith

claim since reasonable minds could have found that State Farm acted in bad faith. Plaintiff also contends that the trial court erred in excluding evidence of punitive damages and consequential damages including attorney fees.

### I.

■ In reviewing a directed verdict, the court must examine all the evidence in the light most favorable to the losing party. *Acculog, Inc. v. Peterson*, 692 P.2d 728, 732 (Utah 1984). If the evidence permits reasonable persons to reach different conclusions on the issues, the directed verdict should not be granted. *Little Am. Ref. Co. v. Leyba*, 641 P.2d 112, 114 (Utah 1982); *Cerritos Trucking Co. v. Utah Venture No. 1*, 645 P.2d 608, 611 (Utah 1982).

After the trial court granted State Farm's motion for a directed verdict on the bad faith issue, the Utah Supreme Court rendered *Beck v. Farmers Insurance Exchange*, 701 P.2d 795 (Utah 1985).[1] In *Beck*, the Court held that "as parties to a contract, the insured and the insurer have parallel obligations to perform the contract in good faith." *Id.* at 801. The Court then defined the obligation of good faith as contemplating that "the insurer will diligently investigate the facts to enable it to determine whether a claim is valid, will fairly evaluate the claim, and will thereafter act promptly and reasonably in rejecting or settling the claim." *Id.* In addition, the Court stated that the duty of good faith "requires the insurer to 'deal with laymen as laymen and not as experts in the subtleties of law and underwriting' and to refrain from actions that will injure the insured's ability to obtain the benefits of the contract." *Id.*

With these principles in mind and viewing the evidence in the light most favorable to plaintiff, we examine whether reasonable minds could differ as to whether State

Farm breached its obligation of good faith. It was undisputed that State Farm denied coverage for plaintiff's claim because "the damages sustained to the internal parts of the engine were not a result of a collision loss but rather a result of a mechanical failure, wear and tear." However, State Farm's claims manual states:

MOTOR DAMAGE FROM LOSS OF OIL:

. . . .

Claims for damage to the motor caused by the loss of oil following a roadbed collision will qualify for payment under any form of Collision Coverage.

A roadbed collision shall be deemed to be any contact between the insured vehicle and the roadbed, or any object fixed, frozen or imbedded in the road such as a rock, stump, or any other stationary object.

There should be a reasonable compliance with that condition of the policy which provides, 'When loss occurs the named insured shall use every reasonable means to protect the damaged property covered by this policy from any further damage.'

This has the effect of treating motor damage following a roadbed collision as a part of the direct damage, instead of indirect damage. Reference to the Conditions Section is made because the payment should not include any amount for damage resulting from the further operation of the vehicle after damage to the oil pan or to the motor has become known to the operator, or after the existence of damage should have become known by the operator exercising reasonable care.

At trial plaintiff testified that he was in the wholesale jewelry business and had never worked on cars other than adding windshield washer fluid, radiator fluid and oil. He also testified that he had stopped

---

1. *Beck* overruled *Lyon v. Hartford Accident and Indemnity Co.*, 25 Utah 2d 311, 480 P.2d 739 (1971) to the extent that *Lyon* was philisophically inconsistent with the *Beck* Court's recognition of a cause of action in contract for the insurer's failure to perform the contract in good faith and noted that *Lyon* considered only the question of whether a claim of bad faith gave rise to a tort cause of action. *Beck*, 701 P.2d at 798 n. 1. The Court characterized the ruling in *Lyon* as leaving "an insured without any effective remedy against an insurer that refuses to bargain or settle in good faith with the insured." *Id.* at 798.

his car after hitting the metal object, looked under the car and did not see any oil. After inspecting the car, he drove for another three miles before he noticed a loss of power, observed that the oil light was on and stopped the car. In addition, there was conflicting testimony as to whether the loss of lubrication occurred within seconds of impact with the metal object or whether plaintiff caused the damage by continuing to operate the vehicle. Plaintiff's witness, Gary Majnik, who repaired his car, testified that an engine in a Fiat Spider could be damaged by loss of lubrication within seconds of hitting an object. Plaintiff also called another mechanic, Steve Crane, who testified that a person without general knowledge of mechanics, who hit something on the underside of a 1979 Fiat and dented the oil pan, would not know whether to continue driving the car other than as indicated by the warning systems in the car. He also stated that the warnings systems can malfunction.

Based on these facts, we find that reasonable minds could differ as to whether plaintiff, exercising reasonable care, knew or should have known that the oil pump was damaged and that he should not continue to drive the car. Further, we conclude that reasonable persons could reach different conclusions as to whether State Farm fairly evaluated the claim and acted reasonably in rejecting or settling the claim. Therefore, we hold that, in light of *Beck*, the directed verdict on the bad faith issue was improperly granted, and the issue should have been decided by the jury.

## II.

■ The second issue is whether the court improperly excluded evidence of puni-tive damages and consequential damages including attorney fees. Immediately prior to the trial in this case, the judge stated on the record that the parties and the court agreed to exclude evidence of punitive damages unless and until the jury found that State Farm had acted in bad faith. No objection was voiced by plaintiff. Therefore, we find no merit in plaintiff's claim that evidence of punitive damages was improperly excluded. On the second day of trial, the court stated that it would exclude evidence of attorney fees but would reserve the right to later admit evidence of attorney fees if the jury found bad faith. Generally, attorney fees are not chargeable to an opposing party unless there is contractual or statutory liability for them. *Espinoza v. Safeco Title Ins. Co.*, 598 P.2d 346, 348 (Utah 1979). However, according to *Beck*, consequential damages such as attorney fees may be recoverable in an insurance carrier lack of good faith case. *Beck*, 701 P.2d at 801–02. Therefore, we find no error in the exclusion of attorney fees until after plaintiff established that State Farm breached its implied obligation of good faith. If lack of good faith is found on remand, consideration of punitive damages and consequential damages will be appropriate.

Reversed and remanded.

BILLINGS and BENCH, JJ., concur.