[No. 54623–1.   En Banc.   July 14, 1988.]

SHERRI FITTRO, *Petitioner,* v. LINCOLN NATIONAL LIFE INSURANCE COMPANY, *Respondent.*

*James E. Warme* (of *Calbom, Pond, Falkenstein, Warme & Engstrom*), for petitioner.

*Lane, Powell, Moss & Miller,* by *D. Joseph Hurson,* for respondent.

UTTER, J.—Sherri Fittro seeks reversal of a Court of Appeals decision granting partial summary judgment to defendant Lincoln National Life Insurance Company (Lincoln) on the issue of termination of medical benefits during disability. Ms. Fittro contends there is a conflict between the certificate of insurance which she received from the insurance company and the master policy, and that the certificate should control. We agree and reverse the Court of Appeals.

On September 26, 1981, Ms. Fittro was injured in an automobile accident which left her a quadriplegic. At the time of the accident, Ms. Fittro was a full–time grocery clerk at Keil's Grocery Store in Longview. As a benefit of employment, she was insured for health and disability under a group policy issued by Lincoln. As required by law, Lincoln gave Ms. Fittro a certificate describing the insurance program; Lincoln did not distribute the master policy but made it available for review in its local office.

The master policy provides that

> personal insurance of an employee shall automatically terminate immediately upon . . . the date of his termination of employment with the Employer or of his termination of membership within the eligible classes".

Transcript of Record, at 267. The policy defines "termination of employment" as the "cessation of active work". However,

> an employee who is . . . unable to work because of disability will nevertheless be considered as still employed . . . until the Policyholder . . . terminates the employee's personal insurance by notifying the Insurance

Company to that effect or by discontinuing premium payments for such insurance.

Transcript of Record, at 267.

The policy contains a section entitled "Extended Coverage" which reads as follows:

> If upon the date of termination of an employee's personal insurance for Major Medical Expense Benefits, he is totally disabled . . . coverage for the employee pertaining solely to the illness which caused the total disability will be extended during the subsequent period of continuous total disability, but for not longer than 12 months after the date of termination. The provisions applicable to extended coverage will be the same as would have applied had the insurance not terminated.

Transcript of Record, at 281.

Ms. Fittro was "totally disabled" as a result of the accident[1] and was not employed for the next 13 months. During that time, Lincoln paid $45,920 in health insurance benefits under the policy.

On November 1, 1982, Ms. Fittro began working at Longview Fiber Credit Union as a keyboard operator. With a pencil strapped to her hand, she enters data one key at a time. Although a full–time employee, she misses considerable work owing to physical complications and irregular service from attendants responsible for administering her care.

When Ms. Fittro began working at the credit union, Lincoln Insurance promptly terminated her benefits under the policy. According to Lincoln, Fittro's full–time work meant that she was no longer "totally disabled." Consequently, she was ineligible to receive disability benefits under the policy.

In May 1983, Ms. Fittro sued Lincoln alleging that under the certificate of coverage, the policy should have extended

---

[1]This finding was made by the trial court. Lincoln sought to have this part of the court's ruling reversed by the Court of Appeals, but the Commissioner denied review and Lincoln failed to file a timely motion to modify the ruling. Hence, this issue is not before us.

indefinitely so long as she continued making premium payments. The certificate states that "the holder" is entitled to coverage under a Lincoln policy. On the cover it states

> This certificate of insurance is not an insurance policy and does not amend, extend or alter the coverage afforded by the policy/policies listed herein.

Transcript of Record, at 132. However, the certificate also states in the next paragraph that "[t]he benefits are as described in this certificate booklet."

Ms. Fittro rests her claim for continued benefits on the termination provision in the certificate which states:

> In the event this insurance is terminated or employment terminated and the insured . . . is totally disabled, the disabled person will continue to be eligible to receive Major Medical benefits, providing he remains totally disabled for a period of 12 months following termination.

Transcript of Record, at 136. Ms. Fittro contends that this language provides for indefinite extension of benefits up to the $250,000 policy limit so long as she was totally disabled for 12 months following termination. Lincoln contends that the termination of coverage in November 1982 was justified because Ms. Fittro was employed and that, in any event, disability coverage could be extended only through September 1983.

Both sides moved for summary judgment. In December 1985, the trial court entered a partial summary judgment order for Lincoln, concluding that the insurance policy and certificate construed together gave Lincoln the authority to terminate Fittro's insurance coverage as of September 30, 1983.[2]

In a split decision, the Court of Appeals affirmed. Writing the opinion of the court, Judge Petrich held that the

---

[2]Lincoln calculated this 2–year period of coverage as follows: 2 months' coverage had been prepaid, an additional 4 months' coverage with waiver of premium, followed by a 6–month self–pay privilege, plus a one–time extension of 12 months if the insured was still disabled at the end of the first year. This calculation was premised on the company's determination that Ms. Fittro's rights under the policy terminated on the day of the accident when she was unable to return to work at Keil's.

terms in the policy take precedence over those in the certificate of coverage, and that coverage terminated September 30, 1983. Judge Alexander dissented, arguing that the certificate should control and that Lincoln should be estopped from relying on conflicting terms in the master policy. In a special concurrence, Judge Reed found estoppel principles inapplicable in the absence of any evidence of reliance on the language in the certificate. *Fittro v. Lincoln Nat'l Life Ins. Co.*, 49 Wn. App. 499, 744 P.2d 631 (1987). This court granted Ms. Fittro's petition for review.

## I

Interpreting the language of the certificate in a manner understandable to the average person, *State Farm Gen. Ins. Co. v. Emerson*, 102 Wn.2d 477, 687 P.2d 1139 (1984), we conclude that it provides medical coverage to a person "totally disabled" for as long as the disability persists (up to the limits of the policy). This language conflicts with provisions of the policy that, according to Lincoln, would terminate medical coverage after 2 years. The central legal issue in this case is, therefore, whether the language in a certificate of coverage takes precedence over and controls conflicting language in the master policy.

The issue is a question of first impression in this state. Although case law from other jurisdictions reveals a split of authority on this issue, the majority rule is that the coverage provisions stated in a certificate of coverage furnished to an insured by the insurer takes precedence over conflicting terms in the master policy. *See* Annot., *Group Insurance: Binding Effects of Limitations on or Exclusions of Coverage Contained in Master Group Policy But Not in Literature Given Individual Insureds*, 6 A.L.R.4th 835 (1981). We find the majority rule to be the better rule of law and adopt it here.

■ Washington law requires the issuance of certificates for holders of a group disability insurance policy. RCW 48.21.080 provides in relevant part:

In group disability insurance policies there shall be a provision that the insurer shall issue to the employer, the policyholder, or other person or association in whose name such policy is issued, for delivery to each insured employee or member, a certificate setting forth in summary form a statement of the essential features of the insurance coverage, and to whom the benefits thereunder are payable . . .

This requirement is reiterated in WAC 284–44–050. The purpose behind the statute is furthered only by the provision of accurate information in the certificate regarding the scope and duration of the policy; otherwise, the insureds and their beneficiaries could be deprived of the opportunity to supplement their coverage should they find it inadequate. *See Martin v. Crown Life Ins. Co.,* 202 Mont. 461, 658 P.2d 1099, 1103 (1983); *Humphrey v. Equitable Life Assur. Soc'y of Am.,* 67 Cal. 2d 527, 432 P.2d 746, 750, 63 Cal. Rptr. 50 (1967).

Given this statutory mandate to issue a certificate, it is appropriate to consider the certificate of coverage as part of the insurance contract along with the master policy. This has long been a general rule of insurance law. *See* G. Couch, *Insurance* § 82.7 (2d rev. ed. 1984); *Kirkpatrick v. Boston Mut. Life Ins. Co.,* 393 Mass. 640, 473 N.E.2d 173 (1985); *Martin v. Crown Life Ins. Co., supra; Davis v. Crown Life Ins. Co.,* 696 F.2d 1343 (11th Cir. 1983) (applying Florida law); *Morris v. Travelers Ins. Co.,* 546 S.W.2d 477 (Mo. Ct. App. 1976); *Humphrey v. Equitable Life Assur. Soc'y of Am., supra.*

Several of those courts which consider the certificate to be part of the insurance contract are in states where statutes exist similar to the Washington law quoted above requiring the issuance of individual certificates of coverage for group policies. *See Martin; Humphrey; Lecker v. General Am. Life Ins. Co.,* 55 Hawaii 624, 525 P.2d 1114, 1118–19 (1974). *See also Sahlin v. American Cas. Co.,* 103 Ariz. 57, 436 P.2d 606 (1968). Since the certificate is as much a part of the insurance contract as the master policy, courts

interpret conflicting language to provide the broadest coverage. This result is justified since

the individual certificate is the only instrument which the employee sees at any time . . . [I]f the insurer chooses to draft and to issue these certificates in language selected by it, then it cannot be heard to complain that such language does not express the intention of the parties.

1 J. Appleman, *Insurance* § 46, at 158 (1981) (cited in *Kirkpatrick*, 473 N.E.2d at 178).

Several courts have stated that language in the master policy should control over conflicting language in the certificate when the certificate specifically states that it was subject to the terms of the master policy. These courts reason that the certificate is mere evidence of insurance and does not comprise part of the insurance contract. For example, in *Standard of Am. Life Ins. Co. v. Humphreys*, 257 Ark. 618, 519 S.W.2d 64, 67 (1975), the court ruled that ambiguity in the certificate was of no consequence since the master policy was clear and the certificate stated that it was subject to the terms of the master policy. *See also Page v. Prudential Ins. Co. of Am.*, 231 Ala. 405, 165 So. 388 (1936).

The certificate at issue in this case contains a disclaimer provision stating that the certificate was not an insurance policy and did not alter or amend the provisions of the policy. On this basis, the Court of Appeals held that the unambiguous provisions in the master policy terminating coverage after 2 years prevailed despite language in the certificate that provided coverage indefinitely during total disability. *Fittro*, at 506.

We disagree. Such disclaimer language should not be given effect when the certificate is issued under statutory mandate and is the only document the insured is likely to see before incurring expenses for covered injuries. A disclaimer is standard boiler–plate language in certificates. A clear majority of those courts that have considered similar disclaimer provisions in other certificates have *not* given effect to the disclaimer and have instead enforced the

broader coverage suggested in the certificate. *Lecker,* 525 P.2d at 1119; *Riske v. National Cas. Co.,* 268 Wis. 199, 67 N.W.2d 385, 389 (1954); *Humphrey,* 432 P.2d at 750; *Linn v. North Idaho Dist. Med. Serv. Bur., Inc.,* 102 Idaho 679, 638 P.2d 876, 886 (1981).

We find the approach adopted by those courts to be the only one consistent with the clear purposes of RCW 48.21-.080. As the Wisconsin Supreme Court interpreted the provisions of a nearly identical statute, there could be

> no possible purpose in the requirement of a certificate . . . if the certificate so demanded is to be without effect. We perceive no persuasion in [the] proposal that the certificate may misrepresent the insurance protection without redress so long as it refers the holder to the master policy. Under such an emasculation of the purpose of the statute, the representations of the certificate merely set a trap for the insured. On the contrary, if the statute is to be credited with any virility, the insured is entitled to rely on the certificate which the law requires the insurer to give him . . .

*Riske,* at 207.

Giving effect to disclaimer language in a certificate would require the insured to demand a copy of the policy in order to compare it against the certificate for ambiguities between the two documents in regard to a claim which had not yet arisen. *See Linn v. North Idaho Dist. Med. Serv. Bur., Inc., supra.* This is too great a burden to place on an individual insured, particularly when the master policy is not always readily available.

## II

We conclude that, as a matter of public policy, insurance companies operating under a statutory mandate to issue certificates of coverage to holders of group insurance policies will be held to the terms they choose to place in the certificate. Since the certificate and master policy issued by Lincoln in this case conflict on the duration of coverage during disability, we hold that the language of the certificate controls. Therefore, so long as Ms. Fittro continues to

make premium payments, she is entitled to receive medical benefits for the duration of her disability up to the overall policy limit of $250,000.[3]

The judgment of the Court of Appeals is hereby vacated and the case remanded to the trial court for the sole purpose of determining the amount of damages caused by Lincoln's wrongful termination of coverage.

PEARSON, C.J., and BRACHTENBACH, DOLLIVER, DORE, ANDERSEN, CALLOW, GOODLOE, and DURHAM, JJ., concur.

---

[3]Ms. Fittro contends that, even if the policy language takes precedence, the "Waiver of Premium" provision in the master policy can read to extend her coverage indefinitely. In light of our disposition of this case, we decline to resolve this issue.