**VALLEY BANK AND TRUST COMPANY, Plaintiff and Appellant,**

v.

**U.S. LIFE TITLE INSURANCE COMPANY OF DALLAS, a Texas Corporation, Defendant and Respondent.**

No. 890043–CA.

Court of Appeals of Utah.

June 23, 1989.

Roy G. Haslam and Elizabeth S. Whitney, Salt Lake City, for plaintiff and appellant.

Steven H. Gunn, Salt Lake City, for defendant and respondent.

Before DAVIDSON, BENCH and BILLINGS, JJ.

## OPINION

BILLINGS, Judge:

Following a bench trial, the court entered judgment in favor of U.S. Life Title Insurance Company of Dallas ("U.S. Title"), dismissing Valley Bank & Trust Company's ("Valley Bank") complaint with prejudice. The trial court concluded the title insurance policy issued by U.S. Title to Valley Bank expressly excepted defects "created by the insured," and thus, Valley Bank's claim was excluded from coverage. We affirm.

## FACTS

Valley Bank and Valley Mortgage are wholly owned subsidiaries of Valley Utah Bancorporation. Valley Mortgage often acts as an agent for Valley Bank in arranging for and closing Valley Bank mortgage loans.

In April 1983, Valley Bank's small business administration department[1] loaned $65,000 to Kent and Patricia Nance ("SBA loan"). The SBA loan was secured by a trust deed lien on the Nances' Summit County, Utah residence ("SBA trust deed"). The SBA trust deed was recorded April 5, 1983.

Approximately three weeks later, the Nances obtained a conventional mortgage loan ("Residential loan") from Valley Mortgage, and although the Residential loan request originated with Valley Mortgage, and was handled exclusively by Valley Mortgage personnel, Valley Bank was the ultimate lender, and the corresponding loan documents were executed on Valley Bank forms. The Residential loan was secured by a trust deed lien on the same property securing the SBA loan ("Residential trust deed"). The Residential trust deed was recorded April 26, 1983. It is undisputed that the Nances had not informed Valley Mortgage of the SBA loan or the corresponding trust deed.

Prior to closing the Residential loan, Valley Mortgage, on behalf of Valley Bank, contacted Mountain View Title, an agent of U.S. Title, and requested a commitment for title insurance. The commitment specifically excepted two prior liens held by First Security Bank and Citizens Bank respectively, but did not list the SBA trust deed lien. A policy of title insurance was issued to Valley Bank sometime after July 22, 1983.

Paragraph 3(a) of the insurance policy excludes coverage for any defect "created by the insured." It is undisputed that the policy and the commitment did not specifically identify the SBA trust deed lien or exclude it from coverage. It is also undisputed that at the time the Residential loan closed, Paul Thurston, Valley Mortgage's residential loan officer, was unaware that the SBA loan or the SBA trust deed lien existed. Furthermore, at the time U.S. Title issued the policy of title insurance, its

---

**1.** This department of Valley Bank is charged with making loans guaranteed by the Small Business Administration of the United States.

agent, Mountain View Title, did know of the prior SBA trust deed lien, but did not communicate such knowledge to Valley Bank.

Valley Bank subsequently assigned the Residential loan and trust deed to Valley Mortgage and it in turn sold the loan and assigned the trust deed to Federal Home Loan Mortgage Corporation ("Federal Home Loan"). In connection with both assignments, Valley Bank and Valley Mortgage warranted that the Residential trust deed was a first lien on the property.

In early 1984, the Nances defaulted on the SBA loan, and the Residential loan. Shortly thereafter, Federal Home Loan learned of the SBA trust deed lien, and made demand upon U.S. Title to defend its interest under its Residential trust deed. U.S. Title denied coverage relying on the exclusionary provision set forth in paragraph 3(a), and refused Federal Home Loan's tender of defense. Consequently, Federal Home Loan demanded that Valley Bank repurchase the Residential loan or alternatively, that it remedy the Nances' default. In response, Valley Bank brought all payments current, but eventually decided to buy back the loan. Thereafter, Valley Bank initiated these proceedings against U.S. Title to recover its losses as a result of the SBA lien.

■ Based on the facts set forth above, the trial court concluded that Valley Bank, by obtaining a lien on the Nances' property to secure payment of the SBA loan, "created a lien or encumbrance" within the meaning of the title insurance policy's exclusionary provision. Accordingly, the trial court dismissed Valley Bank's complaint against U.S. Title. Valley Bank appeals from the trial court's judgment claiming

the court erred in concluding Valley Bank "created" the SBA trust deed lien within the meaning of the exclusion clause. Valley Bank's argument is two-fold: First, Valley Bank argues it could not have "created" the SBA lien because it did not have *actual knowledge* of the lien at the time it made the Residential loan to the Nances. Second, in the absence of its fraud or misconduct, the exclusionary provision should not apply to Valley Bank.[2]

## STANDARD OF REVIEW

■ Valley Bank does not challenge the trial court's findings of fact. Thus, the sole issue on appeal involves the interpretation of the policy exclusionary provision, and "[q]uestions of contract interpretation not requiring resort to extrinsic evidence are matters of law, and on such questions we accord the trial court's interpretation no presumption of correctness." *Zions First Nat'l Bank v. National Am. Title Ins. Co.*, 749 P.2d 651, 653 (Utah 1988). *See also Draughon v. Cuna Mut. Ins. Soc'y*, 771 P.2d 1105, 1106 (Utah Ct.App.1989). Specifically, the parties dispute the meaning of paragraph 3(a) of the title insurance policy which provides, with our emphasis:

> The following matters are expressly excluded from the coverage of this policy:
>
> Defects, liens, encumbrances, adverse claims, or other matters (a) *created,* suffered, assumed or agreed to *by the insured claimant....*

## TITLE INSURANCE

■ Title insurance is intended to indemnify an insured for losses suffered "by reason of defects in the title to the property or by reason of liens or encumbrances

---

**2.** Valley Bank also claims that as a matter of public policy, we should find the exclusionary clause void under these facts and in the alternative, U.S. Title is equitably estopped from asserting the exclusion. The latter challenge has been raised for the first time on appeal, and thus we decline to address the merits. *See, e.g., Zions First Nat'l Bank v. National Am. Title Ins. Co.*, 749 P.2d 651, 654 (Utah 1988). Moreover, we find Valley Bank's public policy argument without merit. Exclusionary clauses such as the one involved in this case are routinely included in

title insurance policies and enforced by the courts. *See* Annotation, *Title Insurance: Exclusion of Liability for Defects, Liens, or Encumbrances Created, Suffered, Assumed, or Agreed to by the Insured,* 87 A.L.R.3d 515, 516–17 (1978). Additionally, this is not a case where the parties were of unequal bargaining positions, and Valley Bank was presumably free to negotiate the terms of its policy. Finally, we have reviewed Valley Bank's remaining claims and find they do not merit discussion.

on the property itself." *Brown v. St. Paul Title Ins. Corp.*, 634 F.2d 1103, 1107 (8th Cir.1980). As with insurance policies in general, "the parties are free to define the exact scope of the policy's coverage and may specify the losses or encumbrances the policy is intended to encompass." *Id.* However, policy provisions excluding coverage are strictly construed against the insurer and in favor of the insured. *See, e.g., LDS Hosp. v. Capitol Life Ins. Co.*, 765 P.2d 857, 859 (Utah 1988) (citing *Phil Schroeder, Inc. v. Royal Globe Ins. Co.*, 99 Wash.2d 65, 659 P.2d 509, 511 (1983)). Notwithstanding generally recognized principles of strict construction, if the terms of the insurance policy are clear and unambiguous, we interpret those terms in accordance with their plain and ordinary meaning. *See LDS Hosp.*, 765 P.2d at 858–59. *See also Draughon*, 771 P.2d at 1106 (and citations therein).

With the foregoing principles in mind, we address Valley Bank's claim that it did not "create" the SBA trust deed lien within the meaning of the exclusionary clause.

As noted above, in the absence of ambiguity, we interpret the terms of an insurance policy according to their plain meaning. In this respect "create" is defined as "to bring into existence ... to cause to be or produce by ... legal action ... to bring about by a course of action or behavior...." *Webster's Third New Int'l Dictionary (Unabridged)* 532 (1986). Several courts interpreting the word "created" in standard title insurance policies have required *intentional causation.* For example, the Sixth Circuit Court of Appeals has interpreted "created" "to require a conscious, deliberate and sometimes affirmative act intended to bring about the conflicting claim, in contrast to mere inadvertence or negligence." *American Sav. & Loan Ass'n v. Lawyers Title Ins. Corp.*, 793 F.2d 780, 784 (6th Cir.1986). Similarly, the Eighth Circuit Court of Appeals in discussing the term "created" declared that

an "insurer can escape liability ... if ... the insured either expressly or impliedly assumed or agreed to the defects or encumbrances in the course of purchasing the property involved." *Brown v. St. Paul Title Ins. Corp.*, 634 F.2d 1103, 1107–08 n. 8 (8th Cir.1980).

Accordingly, Valley Bank's claim that it did not "create" the SBA trust deed lien is without merit. Valley Bank freely admits that the small business administration department is a department of Valley Bank. Valley Bank further concedes, as it must, that the SBA department "created" the SBA trust deed lien to secure repayment of the SBA loan. Thus, under general and fundamental principles of agency, the SBA department's act of creating the lien is imputed to its principal, Valley Bank.

> Any person who is sui juris and has capacity to affect his legal relationships by the giving of consent to a delegable act or transaction may authorize an agent to act for him with the same effect as if he were to act in person. The principal may be either a natural person or an artificial one.

3 Am.Jur.2d *Agency* § 9 at 516–17 (1986) (footnotes omitted). *See also* Restatement (Second) of Agency § 274 at 595 (1958).

Furthermore, contrary to Valley Bank's suggestions, this is not a case where the named insured created a lien by negligence or inadvertence. Rather, Valley Bank's primary argument is that the Valley Mortgage employees who handled the Residential loan were unaware of the SBA trust deed lien. However, *Valley Mortgage's* knowledge of the defect is of no consequence for purposes of interpreting the express provisions of the policy.[3] Valley Bank was the lender on both the SBA loan and the Residential loan. Valley Bank intentionally and deliberately created the SBA lien, and it was also the named insured under the policy of title insurance insuring the Residential loan. The plain

---

**3.** Throughout its brief, Valley Bank refers to "Valley Bank" and "Valley Mortgage" interchangeably. The relevant party is Valley Bank as it is the named insured under the policy, and was also the lender in the SBA loan transaction.

Accordingly, Valley Mortgage's knowledge of the SBA lien is not relevant to the issue of whether Valley Bank "created" the lien in question.

language of the insurance policy states that defects created by the insured, i.e. Valley Bank, are excluded from coverage.

We next address Valley Bank's claim that exclusions for defects created by the insured should not be enforced in the absence of fraud or misconduct on the part of the insured. Valley Bank cites a number of cases in support of its proposition. *See, e.g., American Sav. & Loan Ass'n v. Lawyers Title Ins. Corp.,* 793 F.2d 780 (6th Cir.1986); *Brown v. St. Paul Title Ins. Corp.,* 634 F.2d 1103 (8th Cir.1980); *Taussig v. Chicago Title & Trust Co.,* 171 F.2d 553 (7th Cir.1948); *Conway v. Title Ins. Co.,* 291 Ala. 76, 277 So.2d 890 (1973); *Ginger v. American Title Ins. Co.,* 29 Mich. App. 279, 185 N.W.2d 54 (1971); *Feldman v. Urban Commercial, Inc.,* 87 N.J.Super. 391, 209 A.2d 640 (1965).

After reviewing these cases, we find they are all either factually distinguishable from this case, or do not support Valley Bank's proposition. For instance, in *American Savings and Loan,* the Sixth Circuit Court of Appeals declared that an insured "creates" a defect if the lien " 'resulted from some intentional misconduct *or ...* the insured either expressly or impliedly ... agreed to the defects ... in the course of purchasing the property involved.' " 793 F.2d at 784 (quoting *Brown v. St. Paul Title Ins. Co.,* 634 F.2d 1103, 1107–08 n. 8 (8th Cir.1980)) (emphasis added). *See also Feldman,* 209 A.2d at 647–48 (created means some affirmative act bringing the defect into "fruition"). *See generally* Annotation, *Title Insurance: Exclusion of Liability for Defects, Liens, or Encumbrances Created, Suffered, Assumed, or Agreed to by the Insured,* 87 A.L.R.3d 515, 516–17 (1978).

We decline to rewrite[4] or read into Valley Bank's policy of title insurance that the insurer must establish the insured was guilty of fraud or misconduct before invoking the protections of the exclusionary clause. Moreover, had the parties intended such a restriction, they could have easily

provided for the same through the terms of the policy itself. *Cf. Zions First Nat'l Bank,* 749 P.2d at 654 ("if something broader ... was intended by [the] language, certainly the drafter ... could have included appropriate language"); *Draughon,* 771 P.2d at 1107.

In sum, we hold Valley Bank intentionally and deliberately "created" the SBA trust deed lien, and it is therefore, expressly excepted from coverage under the terms of Valley Bank's policy. Accordingly, the trial court's judgment is affirmed.

DAVIDSON and BENCH, JJ., concur.

---

4. *See Crowther v. Carter,* 767 P.2d 129, 132 (Utah Ct.App.1989) ("it is not the function of a court to rewrite an unambiguous contract").