Sherie L. MOORE, Plaintiff
and Appellant,

v.

ENERGY MUTUAL INSURANCE COMPANY, Defendant and Appellee.

No. 910045–CA.

Court of Appeals of Utah.

June 26, 1991.

bile a complete and distinct offense in context

of involuntary manslaughter).

Robert L. Jeffs (argued), Jeffs & Jeffs, Provo, for plaintiff and appellant.

Rinehart L. Peshell (argued), Fairbourn & Peshell, Midvale, for defendant and appellee.

Before BENCH, BILLINGS and GARFF, JJ.

## OPINION

BILLINGS, Associate Presiding Judge:

Plaintiff/appellant Sherie Moore (Moore) appeals from the court's grant of summary judgment in favor of defendant Energy Mutual Insurance Co. (Energy Mutual) dismissing her complaint. We reverse and remand.

Energy Mutual issued a legal fees insurance plan to Utah Power and Light for the benefit of its employees. As an insured employee, Moore's husband received a certificate or summary of the legal fees insurance plan, while the master plan was given only to Utah Power and Light. In the section labeled "Charges Excluded from Coverage" the summary plan excluded: "All charges which do not meet the criteria for eligible charges, as defined in the Group Legal Expense Insurance Policy and in addition, any charges for: ..." (setting out fifteen different excluded charges). The summary plan contained no reference to contingent fees or any exclusion thereof.

In the section labeled "excluded charges," the master group policy given to Utah Power and Light set forth nearly verbatim, the same fifteen excluded charges as the summary plan. The master policy, however, also included two additional exclusions, one for charges in excess of $2,000 in a divorce action, and one for "[a]ny legal proceeding in which fees are charged contingent upon the outcome of the proceeding or in which fees would normally be charged on a contingent basis in the absence of this or any other legal expense policy or plan."

In October 1988, Moore retained an attorney under a contingency fee contract to represent her in a suit against her automobile insurer resulting from an accident with an uninsured motorist. In February 1989, Moore's attorney contacted Energy Mutual and was orally notified that the legal expense policy did not cover contingent attorney fee arrangements. At this time, her attorney had begun, but not completed, his work which ultimately ended in a favorable settlement for plaintiff. Energy Mutual sent a letter denying coverage and confirming the contingency fee exclusion to plaintiff's husband and her attorney on March 8, 1989 stating: "I do understand the confusion as the exclusion for contingency fee cases was not included on some plan summaries distributed to employees.... However, the statement on the first page of the summary provides: 'IN CASE OF ANY CONFLICT BETWEEN THE SUMMARY PLAN AND THE PLAN DOCUMENT, THE PLAN DOCUMENT WILL GOVERN.'" Plaintiff finally received a copy of the master plan pursuant to a discovery request in April 1990.

After discovery, both parties moved the trial court for summary judgment. The trial court denied plaintiff's motion and granted summary judgment in favor of defendant.

Summary judgment is proper only where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Pixton v. State Farm Mut. Automobile Ins. Co.*, 809 P.2d 746, 748 (Utah App.1991) (citing *Ehlers & Ehlers Architects v. Carbon County*, 805 P.2d 789, 791 (Utah App.1991) and *Shire Dev. v. Frontier Invs.*, 799 P.2d 221, 222–23 (Utah App.1990)). We view the facts and inferences therefrom in a light favorable to the losing party and affirm the summary judgment only where there is no genuine dispute regarding material facts and where viewing the facts as contended by the losing party, the moving party is entitled to judgment as a matter of law. *Id.* Because summary judgment is granted as a matter of law, and not of fact, we review the trial court's legal conclusions for correctness according no deference. *Id.; see also Palmer v. Davis*, 808 P.2d 128, 130 (Utah App.1991) (citing *CECO Corp. v. Concrete Specialists, Inc.*, 772 P.2d 967, 969 (Utah 1989)).

## I. INSURANCE CONTRACT

Moore claims Energy Mutual is precluded from relying on the exclusion of coverage for contingent attorney fees included in the master policy because this policy was not provided to Moore. Moore claims the controlling terms of the policy are those included in the certificate or summary plan which was provided to her husband and other employees. Moore acknowledges that Energy Mutual ultimately notified her of the contingency fee exclusion, but she contends this belated notification occurred after she had retained counsel, and was thus inapplicable. Energy Mutual responds that the terms of the insurance contract provide that the master policy will

control and contingency fees were clearly excluded from coverage in the master policy.

■ Insurance policies are contracts and thus should generally be interpreted under the rules governing ordinary contracts. *Village Inn Apts. v. State Farm Fire and Cas. Co.*, 790 P.2d 581, 582 (Utah App. 1990). However, as a matter of public policy, ambiguities or inconsistent provisions in insurance contracts are construed against the insurer and in favor of coverage. *See LDS Hosp. v. Capitol Life Ins. Co.*, 765 P.2d 857, 858 (Utah 1988); *Wagner v. Farmers Ins. Exch.*, 786 P.2d 763, 765 (Utah App.1990); *Wilburn v. Interstate Elec.*, 748 P.2d 582, 585 n. 2 (Utah App.1988), *cert. dismissed*, 774 P.2d 1149 (Utah 1989). This rule is based on the premise that insurance contracts are "generally contracts of adhesion which are not negotiated at arms length and which usually contain various provisions for protection of the interests of the insurance company." *General Motors Acceptance Corp. v. Martinez*, 668 P.2d 498, 501 (Utah 1983).

■ This construction in favor of coverage is particularly strong in policies containing ambiguous or conflicting provisions purporting to exclude coverage. *See, e.g., LDS Hosp.*, 765 P.2d at 859; *Phillips v. Utah Local Gov't Trusts*, 660 P.2d 249, 250 (Utah 1983); *Valley Bank & Trust Co. v. U.S. Life Title Ins. Co. of Dallas*, 776 P.2d 933, 936 (Utah App.1989). Although the parties to an insurance agreement "are free to define the exact scope of the policy's coverage and may specify the losses or encumbrances the policy is intended to encompass," *Village Inn Apts.*, 790 P.2d at 583 (quoting *Valley Bank & Trust Co.*, 776 P.2d at 936), exclusions from coverage must use "language which clearly and unmistakably communicates to the insured the specific circumstances under which the expected coverage will not be provided." *Village Inn Apts.*, 790 P.2d at 583; *Wagner*, 786 P.2d at 765.[1]

---

1. In *Marriott v. Pacific Nat'l Life Assurance Co.*, 24 Utah 2d 182, 467 P.2d 981 (1970), the Utah Supreme Court acknowledged the unequal positions of parties to insurance contracts and expressed concern when an insurance company buries exclusions in fine print. The court cautioned that "courts should not give support to such methods and thus enable insurance compa-

Utah appellate courts have consistently held that exclusions from coverage under an insurance policy, even if clear, are ineffective unless they are communicated to the insured in writing. *See Farmers Ins. Exch. v. Call,* 712 P.2d 231, 236 (Utah 1985); *Martinez,* 668 P.2d at 501. In *Farmers,* the supreme court concluded that an automobile insurance policy provision excluding insurance coverage for injuries sustained by household members of the insured was invalid where a copy of the policy was never provided to the insured. The court noted that, "public policy requires that persons purchasing such policies are entitled to be informed, in writing, of the essential terms of insurance contracts, especially exclusionary terms." *Farmers Ins. Exch.,* 712 P.2d at 236. In *Martinez,* an insured debtor was unable to make his car payments due to disability and filed a claim on his credit insurance policy. The policy contained an exclusion for pre-existing conditions. The court concluded the exclusion was invalid where the insured was unaware of it and was not provided with a copy of the policy stating, "the insured is entitled to be informed in writing of the essential terms of the insurance contract, especially the exclusionary terms." *Martinez,* 668 P.2d at 500–01.[2]

In *Martinez,* the Utah Supreme Court also recognized the majority position that, "a certificate of insurance or other literature given an insured describing the coverage controls over a master policy not delivered to the insured." *Id.* at 502.[3]

In summary, Utah case law is consistent with the majority rule that insurance companies are permitted to limit their liability through specific exclusions, but these exclusions are invalid unless clearly communicated to the insured in writing. Thus, if there are inconsistencies in the scope of coverage between the master policy and the certificate or summary plan provided to the individual insured under a group insurance plan, the broader coverage outlined in the certificate is controlling.

Utah's common law position is also in harmony with Utah statutory provisions governing the insurance industry.[4] Utah Code Ann. § 31A–21–311 applies to insurance contracts in general and provides in part: "an insurer issuing a group insurance policy other than blanket shall, as soon as practicable after the coverage is effective, provide a certificate for each member of the insured group.... *The certificate shall contain a summary of the*

---

nies to hold out expectations of coverage with one hand and take them away with the other by setting forth a promise in one part of the contract and then taking it away somewhere else." *Id.* at 982–83.

**2.** The court's analysis of the circumstances in *Martinez* involved a specific statute requiring the delivery of a credit life and disability policy to the insured. This statute has since been replaced by the more recent insurance code discussed *infra*. In *Farmers,* the court concluded that the public policy behind the statute applied equally to automobile insurance policies holding that insureds were entitled to be informed of the essential terms of the insurance policy in writing. *See Farmers Ins. Exch.,* 712 P.2d at 236.

**3.** Numerous jurisdictions have concluded that where the terms of coverage delineated in a certificate provided to the insured vary from a master policy not provided to the insured, the coverage described in the certificate controls. *See, e.g., Davis v. Crown Life Ins. Co.,* 696 F.2d 1343 (11th Cir.1983) (where silence in certificate as to controlling provision creates ambiguity, ambiguity must be resolved in favor of coverage

otherwise insurers would be encouraged to "include few important provisions in the certificate"); *Life Ins. Co. v. Lee,* 519 F.2d 475 (6th Cir.1975) (certificate issued to insured including coverage for permanent disability controlled over master policy not including such coverage); *Kirkpatrick v. Boston Mut. Life Ins. Co.,* 393 Mass. 640, 473 N.E.2d 173, 178 (1985) ("The better view—and 'the present weight of authority'—holds that where insurance certificates create ambiguities in the extent of coverage, and particularly where conflicts exist between the terms of the certificate and the group policy, the language of the certificate, where more favorable to the insured, prevails."); *Martin v. Oklahoma Farmers Union,* 622 P.2d 1078 (Okla.1981) (accidental death master policy contained more exclusions than certificate but court followed "weight of authority" concluding that where certificate provides broader coverage it controls because the insurer drafted the documents and cannot complain about its own choice of language).

**4.** The insurance code, revamped in 1985, is found in Utah Code Ann. §§ 31A–1–101 through –29–123 (1991).

*essential features of the insurance coverage ...."* (Emphasis added.) Utah Code Ann. § 31A–22–1102(3)(c) specifically addresses legal expense insurance policies and mandates that, "[c]ertificates issued under group policies shall contain a *full statement of the benefits provided,* but may summarize the other terms of the master policy." (Emphasis added.) Under this statutory mandate, specific exclusions from coverage must be included in the certificate as such exclusions are both an "essential feature" and part of a "full statement of the benefits" of the insurance policy.

■ In the instant case, the certificate provided to Moore's husband carefully set out, nearly verbatim, fifteen of the seventeen exclusions contained in the master policy.[5] The certificate did not contain an exclusion for legal fees incurred in a contingency fee arrangement. In addition to the fifteen exclusions, the master policy retained by Utah Power and Light also contained exclusions for charges above $2,000 in a divorce action and "[a]ny legal proceeding in which fees are charged contingent upon the outcome of the proceeding or in which fees would normally be charged on a contingent basis in the absence of this or any other legal expense policy or plan." For unknown reasons, these latter two exclusions were left out of the certificate or summary plan provided to the insured.[6]

■ Energy Mutual urges us not to follow the general rule that the coverage provisions contained in the certificate or plan summary delivered to Moore control over the master policy which was not provided to Moore. Energy Mutual relies on the following language in its master policy, arguing this provision precludes application of the general rule.

If the Company should provide to the policyholder for delivery to each Insured Employee an individual certificate setting forth a statement as to the insurance protection to which he or she is entitled and provisions of the policy as may pertain to the Insured Employee, such certificates shall not constitute a part of this policy and in any case of disagreement the provisions of this policy shall prevail.

The limiting language contained in the master policy was never provided to the insured. Under Utah statutes and case law, in order to rely on limiting language, an insurance company must provide individual insureds participating in a group insurance plan with a summary of such limitations or exclusions as they are essential features of the policy. Many jurisdictions which have specifically addressed such boilerplate provisions, even when they, unlike here, have been included in the certificate, have concluded they have no effect on the general rule that the essential coverage provisions, including exclusions, must be provided to the insured in writing. *See, e.g., Lecker v. General American Life Ins. Co.,* 55 Haw. 624, 525 P.2d 1114, 1118 (1974) (insurer estopped from relying on exclusion for accidental death in master policy where not included in certificate in light of statute requiring certificates to contain "essential features" of coverage, and general statement that benefits were subject to master policy was not sufficient to put insured on notice); *Domke v. Farmers & Mechanics Savings Bank,* 363 N.W.2d 898, 901 (Minn.1985) (where certificate summarizing mortgage insurance poli-

---

5. These exclusions included charges for business related matters; class actions, interventions or amicus curae filings; preparation of tax returns; patent or copyright matters; actions by insured against employer or fellow employee; actions between insured and a union or insured and the insurer; legal services in defense of insured charged with criminal conduct against the employer; actions between insured and any other party where coverage is prohibited by law; actions brought in small claims court; duplication of services previously claimed; charges paid by other insurance policies; representation for which insured is not obligated to pay; payment of fines, penalties, or judgments; actions prior to the effective date of the insurance; and services if the matter is without merit or to harass another.

6. The exclusion for charges over $2,000 incurred in a divorce action, although not labeled a specific excluded charge as it is in the master policy, is nevertheless addressed in another portion of the summary plan provided to Moore.

cy did not contain exclusion but indicated the certificate was subject to master policy which actually contained exclusion, court concluded certificate controlled in light of Minnesota statute requiring certificates to include "a description of the amount, term and coverage including any exception, limitations and restrictions"); *Fittro v. Lincoln Nat'l Ins. Co.*, 111 Wash.2d 46, 757 P.2d 1374 (1988) (en banc) (in light of statute requiring certificates to contain "essential features" court concluded that even though certificate indicated the master policy would control that such disclaimer was ineffective). Certainly, where there was no notice to the insured that the master policy would control, the clause is ineffective.

■ Energy Mutual also claims the general reference in the certificate to the eligible charges definition in the master policy is sufficient to incorporate the exclusion of coverage for contingency fee agreements into the certificate. The certificate excludes: "All charges, as defined in the Group Legal Expense Policy and in addition, any charges for [the fifteen excluded charges]." In the master policy, the definition for "eligible charges" does not specifically preclude a contingency fee arrangement, but it does require that a charge not be otherwise precluded from coverage by the terms of the master policy. This general confusing reference to the master policy contained in the certificate was not sufficiently specific to put Moore on notice as to the exclusion for contingency fee arrangements. Energy Mutual should have included all the essential features in the certificate delivered to the insured, especially the exclusions.

■ Finally, Energy Mutual claims it gave Moore and her attorney written notice in a letter dated March 8, 1989, that contingency fee arrangements were excluded under the policy. However, this tardy notice, although given before a final settlement was reached in Moore's action, came after Moore had already entered into a contract with her attorney. We see no reason to allow Energy Mutual to circumvent its statutory and common law responsibility to provide Moore with clear, written notification regarding exclusions by sending her a belated letter. The contingency fee exclusion should have been, and easily could have been, included with the other fifteen exclusions outlined in the certificate.[7]

## II. REASONABLE COURSE OF ACTION

■ Energy Mutual alternatively argues that even if the certificate controls, Moore's coverage is limited to $1,000 in light of a "reasonable course of action" clause. The certificate given to Moore includes a clause that provided: "Determination as to a reasonable course of action must be made by Energy Mutual Insurance Company based on information submitted by the employee, dependent or attorney before action is taken in any case where covered charges exceed $1,000."

Even though Moore's contract with her attorney was in excess of $1,000, Energy Mutual cannot now ask for a belated opportunity to review its reasonableness. Energy Mutual denied Moore's claim on coverage grounds. Thus it would have been a futile act for Moore to have submitted the

7. Energy Mutual also argues that Moore is precluded from relying on the certificate because she did not read it before she entered into the agreement with her attorney. We find this argument misdirected. This is a contract action: the parties are entitled to rely on what is contained in the contract. In this case, the certificate or summary plan provided to Moore is the controlling contract as to coverage. We are aware of no requirement mandating that, in order to recover, an insured must read the insurance contract before incurring the claimed covered expense. We note that in both *Martinez* and *Farmers Ins. Exch.*, the insureds were neither given, nor did they read a copy of the insurance application or policy. *See also Kirkpatrick v. Boston Mut. Life Ins. Co.*, 393 Mass. 640, 473 N.E.2d 173, 176 n. 5 & 179 (1985) (trial judge ruled plaintiff had not relied on certificate provision and appellate court implied this was irrelevant where plaintiff was favored because certificate was part of contract not under principles of estoppel); *Fittro v. Lincoln Nat'l Life Ins. Co.*, 111 Wash.2d 46, 757 P.2d 1374, 1376–78 (1988) (en banc) (supreme court held certificate controlled master policy reversing court of appeals decision that master policy controlled even where special concurrence in court of appeals decision indicated there was no evidence of reliance by insured).

claim for a determination of its reasonableness. Energy Mutual has waived the right to now claim Moore cannot recover fees in excess of $1,000 because Energy Mutual did not approve them as reasonable. On a similar issue, a well known insurance commentator states, "denial of liability by an insurer, made during the period prescribed by the policy for the presentation of proofs of loss, and on grounds not relating to the proofs, will operate as a waiver of the provision of the policy requiring the proofs to be presented." G. Couch, 14 *Couch on Insurance 2d* § 49B:62 (1982).[8]

In the instant case, the question of whether Moore's payment to her attorney was a "reasonable course of action" cannot be raised at this time. Energy Mutual elected to flatly deny insurance coverage on the ground that contingency fee arrangements were excluded from coverage by the terms of the policy, thus waving its right to look at the specific monetary reasonableness of the payment to the attorney. We also note that the policy does not expressly limit the coverage to $1,000 in the event that "a reasonable course of action" is not determined, it simply indicates that a determination must be made before action is taken in a case where covered charges exceed $1,000.

## III. ATTORNEY FEES AS CONSEQUENTIAL DAMAGES

▮▮ Moore claims she is entitled to attorney fees incurred in prosecuting this claim for breach of contract against Energy Mutual as they are consequential damages. Utah appellate courts have held that attorney fees may be awarded as consequential damages against an insurer for breach of contract. *See Canyon Country Store v. Bracey*, 781 P.2d 414, 420 (Utah

1989); *Zions First Nat'l Bank v. National Amer. Title Ins. Co.*, 749 P.2d 651, 657 (Utah 1988); *Beck v. Farmers Ins. Exch.*, 701 P.2d 795, 801–02 (Utah 1985); *Gagon v. State Farm Auto. Ins. Co.*, 746 P.2d 1194 (Utah App.1987), *cert. denied*, 771 P.2d 325 (Utah 1988).

In *Beck*, the Utah Supreme Court recognized an implied covenant of good faith and fair dealing as part of an insurance contract. Noting that consequential damages were recoverable for breach of contract in the event they were reasonably foreseeable at the time of contracting, the court recognized that, "in an action for breach of a duty to bargain in good faith, a broad range of recoverable damages is conceivable, particularly given the unique nature and purpose of an insurance contract." *Beck*, 701 P.2d at 802.

In *Zions*, the court recognized that in an action involving breach of an implied covenant to perform a first-party insurance contract, a court could award consequential damages such as attorney fees incurred in suing the insurer as such fees "plainly are reasonably foreseeable by the parties at the time the contract is made." *Zions*, 749 P.2d at 657. The court further noted that, recovery of attorney fees on this theory was available despite language in a standard form contract to the contrary "because the implied covenant announced in *Beck* cannot be contractually waived." *Id.*; *see also Beck*, 701 P.2d at 801 n. 4 (in first-party contract "duty to perform the contract in good faith cannot, by definition, be waived by either party to the agreement").

In *Canyon Country*, the court concluded that the insured was entitled to attorney fees incurred in suing its insurer for breach of contract even though there was no con-

---

**8.** *See also Miles v. Iowa Nat'l Mut. Ins. Co.*, 690 S.W.2d 138, 143 (Mo.App.1984) (insurer waives submission of proof of loss by denial of all liability prior to expiration of time for filing proof as where policy provision requires insured to furnish proof of loss, "company must walk a straight and narrow path, else it will waive the requirement"); *School Dist. No. 1, Multnomah County v. Mission Ins. Co.*, 58 Or. App. 692, 650 P.2d 929, 942 (1982) ("failure to

give notice or furnish proofs of loss, or defects in the notice and proofs, are waived by a denial of liability on other grounds"), *review denied*, 294 Or. 682, 662 P.2d 725 (1983); *Schippers v. State Farm Mut. Auto. Ins.*, 30 Utah 2d 404, 518 P.2d 1099 (1974) (where insurer denied coverage it could not assert failure to comply with policy provision requiring written notice of accident as defense to coverage in light of fact that insured had orally notified insurer).

tractual provision or statute requiring attorney fees. The court recognized the award of attorney fees as a consequential damage flowing from breach of an insurance contract as set out in *Beck* and *Zions*, but noted that, "attorney fees recovered as damages in a breach of contract suit must be based on the prevailing party's actual losses, i.e., its out-of-pocket expenses for legal counsel.... the same amount it was legally obligated to pay counsel." *Canyon Country*, 781 P.2d at 420. Based upon the above authority, we remand the issue of attorney fees for the trial court to determine if Moore's fees were a reasonably forseeable consequence of Energy Mutual's breach of contract, and if so, to award the appropriate fees.[9]

In conclusion, we reverse the trial court's entry of summary judgment in favor of Energy Mutual. We find that the insurance contract did not effectively exclude coverage for contingency based legal expenses. We remand this case to the trial court for further proceedings consistent with our decision.

GARFF, J., concurs.

BENCH, Presiding Judge (concurring in part and dissenting in part):

Energy Mutual was not entitled to summary judgment based solely on the provisions of the master policy, given the conflicting provisions in the summary plan.

I would reverse the summary judgment and remand the case for trial of all issues, including the $1,000 limitation under the "reasonable course of action" clause, and the claim to attorney fees as consequential damages.

---

9. Energy Mutual argues that attorney fees incurred to pursue her claim cannot be awarded because they are specifically excluded by the policy. The summary plan provided to Moore described the excluded charges stating: "Any action or disputes between an insured employee or an insured dependent and a union of which the employee is a member, or *between an insured employee or insured dependent and the insurer.*" (Emphasis added.) However, Moore is able to recover her attorney fees in this case, not under her contract rights as a covered expense, but as consequential damages incurred as a result of Energy Mutual wrongfully denying coverage for contingency fees which were not excluded from the contract. This clause is therefore of no help to Energy Mutual.