133 F.3d 929
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
STEWART TITLE GUARANTY COMPANY, Plaintiff-counter-defendant-appellee,
v.
NATIONAL ENTERPRISES, INC., Defendant-cross-claimant-Appellant.
STEWART TITLE GUARANTY COMPANY, Plaintiff-counter-defendant-Appellee,
and
Frank E. ROGOZIENSKI, Esq., Appellant,
v.
NATIONAL ENTERPRISES, INC., Defendant-cross-claimant,
and
FEDERAL DEPOSIT INSURANCE CORPORATION; Patrick Frega;
Bruce Reynolds, Appellees.
STEWART TITLE GUARANTY COMPANY, Plaintiff-counter-defendant-Appellee,
v.
NATIONAL ENTERPRISES, INC., Defendant-counter-claimant,
and
Patrick R. FREGA, Appellant.
STEWART TITLE GUARANTY COMPANY,
Plaintiff-counter-defendant-Appellant/Cross-Appellee,
v.
NATIONAL ENTERPRISES, INC.,
Defendant-cross-claimant-Appellee/Cross-Appellant.
 Nos. 96-55800, 96-56385, 96-56499, 96-56551.
 United States Court of Appeals, Ninth Circuit.
 Argued and submitted Oct. 6, 1997.
Dec. 17, 1997.
 
 Before O'SCANNLAIN, FERNANDEZ and THOMAS, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 In this appeal we must decide who, if anyone, has rights under a title insurance policy issued by Stewart Title Guaranty Company ("Stewart"), insuring Mercury Savings & Loan ("Mercury") for any loss or damage arising out of a title defect in a deed of trust given as security for a loan from Mercury to David and Joseph Melamed ("the Melamed loan"). The question of title policy ownership arose when the Resolution Trust Corporation ("RTC") assumed Mercury's assets and liabilities and sold a portion of the assets, including the Melamed loan, to National Enterprises, Inc. ("NEI"). The parties are familiar with the procedural and factual history of this case, so we will not detail it here.
 
 
 3
 Resolution of the questions presented by this appeal requires us to decide: (1) whether the extant lawsuit challenging the authenticity of the deed of trust ("the BMB litigation") constitutes a "claim" under the Stewart insurance policy; (2) whether the rights to any insurance claim which has arisen, or may arise, out of the allegedly defective deed of trust were transferred by the RTC to NEI in their asset transfer contract ("Loan Sale Agreement"); and (3) whether NEI is excluded from coverage under the Stewart policy because it received assignment of the deed of trust with knowledge of the BMB litigation.
 
 
 4
 We first conclude that no claim has yet arisen under the Stewart insurance policy. Paragraph 7 of the policy provides:
 
 
 5
 [n]o claim shall arise or be maintainable under this policy ... (b) in the event of litigation until there has been a final determination by a court of competent jurisdiction, and disposition of all appeals therefrom, adverse to the title....
 
 
 6
 No final, nonappealable judgment has been entered in the BMB litigation. Thus, under the express terms of the Stewart policy, no claim has arisen.[1]
 
 
 7
 Given our conclusion that there is no outstanding policy claim, the "RETAINED CLAIMS" provision of the Loan Sale Agreement, relied upon by Stewart and the district court, is of no import. That section excludes from the general transfer of loan assets, claims and causes of action which the RTC had against any appraiser or title insurer. Because the BMB litigation had not yet matured into a claim when the Loan Sale Agreement was executed, it was not exempted from the general transfer of loan assets. The general transfer language is contained in Section 2.2 of the Loan Sale Agreement, which operates to transfer rights to the insurance policy. Section 2.2 provides:
 
 
 8
 ... [the] Bill of Sale aria Assignment shall sell, transfer, assign, set-over, quitclaim and convey to Buyer, ... all right, title and interest of Seller in and to (i) each of the Loans sold, together with the Loan Documents ... and (ii) all principal and/or interest and/or other amounts due under the Loan Documents and/or other proceeds of any kind paid or collected for payment thereon (including ... insurance proceeds ... ) to the extent any of the foregoing are distributed or paid by or on behalf of any Obligor after the Cutoff Date....
 
 
 9
 The term "Loan Documents" is defined as including the "Loan File," and the "Loan File" in turn explicitly includes "all documents in the possession of Seller relating to any Loan, including ... lender's title insurance policies." Thus, the Loan Sale Agreement transferred the RTC's right to the Stewart title insurance policy unimpaired by any claim retention by the RTC.
 
 
 10
 Summary judgment in a contract case is proper when the contract is not ambiguous. United States v. Contra Costa County Water District, 678 F.2d 90, 91 (9th Cir.1982). Because the Loan Sale Agreement is not ambiguous when considered in the context of the Stewart title policy definition of "claim," summary judgment should have been granted to NEI.
 
 II
 
 11
 The Stewart title insurance policy does not exclude NEI from coverage. The exclusion upon which Stewart relies provides:
 
 
 12
 The following matters are expressly excluded from the coverage of this policy: ... defects, liens, encumbrances, adverse claims, or other matters (a) created, suffered, assumed or agreed to by the insured claimant; (b) not known to the Company and not shown by the public records but known to the insured claimant either at Date of Policy or at the date such claimant acquired an estate or interest insured by this policy or acquired the insured mortgage and not disclosed in writing by the insured claimant to the company prior to the date such insured claimant became an insured hereunder; (c) resulting in no Loss or damage to the insured claimant; (d) attaching or created subsequent to the Date of Policy....
 
 
 13
 The district court determined that NEI acquired the Melamed loan from the RTC with notice of the litigation and adverse claims Therefore, the district court concluded that NEI knowingly "assumed" the defective title, and that NEI's recovery would be excluded from coverage. There is nothing in the Loan Sale Agreement which indicates that NEI assumed title defects. To the contrary, the Loan Sale Agreement contemplates transferring all policy rights without reservation and, as we have discussed, no formal claim has yet arisen. Further, knowledge acquired by the insured after the issuance of the policy clearly does not preclude coverage. Paramount Properties Co. v. Transamerica Title Insurance Co., 463 P.2d 746, 752 (Cal.1970). Neither NEI nor its predecessors in interest (Mercury and the RTC) were aware of the defective title when the Stewart title policy was issued and the premium was paid. Thus, the exclusion does not apply.
 
 
 14
 The cases cited by the district court, Inavest Enterprises v. TRW Title Ins. of New York, Inc., 595 N.Y.S.2d 837 (N.Y.App.Div.1993), and Valley Bank & Trust Co. v. U.S. Life Title Ins. Co. of Dallas, 776 P.2d 933 (Utah Ct.App.1989), are inapplicable. Neither Inavest nor Valley Bank involved a covered claim an an underlying loan that the insurance company was already defending when the underlying loan was merely transferred to a new "insured." Further, both Inavest and Valley Bank involved situations where the original insured caused or assumed a defect before the title insurance policy was ever issued. Thus, Inavest and Valley Bank are inapposite.
 
 III
 
 15
 After the district court awarded summary judgment to Stewart, Stewart filed a Motion for Sanctions against the FDIC and its counsel, NEI, NEI's first counsel, Patrick Frega, and NEI's then current counsel, Frank Rogozienski, pursuant to Fed.R.Civ.P. 11, Fed.R.Civ.P. 37, and the district court's inherent power. The crux of Stewart's motion was that "NEI's entire claim was frivolous, and premised upon the concealment of a written agreement ... [and] it is appropriate in this instance to shift all of Stewart's attorneys' fees and expenses in this litigation to NEI." Stewart's attorneys' fees and expenses totalled $100,154.95.
 
 
 16
 Because we have found NEI's claim to have merit, the award of sanctions was inappropriate.
 
 IV
 
 17
 NEI did not raise in its opening brief the question of whether the district court erred in dismissing its counterclaim. A party may not assert an error on appeal unless the issue is specifically raised in its opening brief. Officers for Justice v. Civil Serv. Comm'n, 979 F.2d 721, 726 (9th Cir.1992). Further, the counterclaim was predicated on insurance claim denial by Stewart. Because the insurance claim has not matured, neither has the cause of action identified in NEI's counterclaim.
 
 V
 
 18
 The issue of NEI's actual loss is not ripe and should be dismissed for lack of jurisdiction The constitutional case or controversy requirements apply to declaratory judgment actions. The ripeness inquiry looks to: (1) whether the issue is fit for judicial decision; and (2) hardship to the parties if review is withheld. Assiniboine and Sioux Tribes v. Bd. of Oil and Gas Conservation, 792 F.2d 782, 788 (9th Cir.1986). A case is considered ripe for review when all of the essential facts establishing the right to declaratory relief have already occurred. Central Montana Electric Power Cooperative v. Administrator of the Bonneville Power Administration, 840 F.2d 1472, 1474 (9th Cir.1988). NET's right to have its actual loss determined has not been established because a claim has not yet arisen under the title insurance policy. The damage issue is therefore not ripe and the district court lacks jurisdiction to determine.the damages in this case.
 
 Conclusion
 
 19
 No claim has yet arisen under the Stewart title insurance policy because there has been no final, nonappealable judgment entered by a court of competent jurisdiction in the BMB litigation. Because no claim has arisen, the retained claims provision in the Loan Sale Agreement is not applicable and the right to the Stewart title insurance policy is vested in NEI. NEI is not excluded from coverage under the defect assumption clause because it did not assume the defect. No sanctions are warranted because NEI's claims were not frivolous, but in fact, meritorious. The district court's judgment on NEI's counterclaim must be affirmed because NEI failed to raise the counterclaim as an issue in its first brief. It is premature to address the theories of damage recovery absent a final resolution of the BMB litigation. Thus, Stewart's claim for declaratory relief concerning the measure of loss under its insurance policy is not ripe.
 
 
 20
 We reverse the judgment and sanctions awarded by the district court and remand with instructions to enter summary judgment in favor of NEI on the contract arid insurance policy exclusion issues We affirm the district court's judgment as to NEI's counterclaim. We dismiss Stewart's claim for declaratory relief on the measure of damages. Each party shall bear its own costs on appeal.
 
 
 21
 AFFIRMED IN PART; REVERSED IN PART; DISMISSED IN PART; AND REMANDED WITH INSTRUCTIONS.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir. R. 36-3
 
 
 [1]
 The fact that Stewart has under-taken defense of the BMB litigation, as is its right under the policy, does not alter this determination. Stewart's assumption of defense does not, by the terms of the policy, transform an unmatured claim into a compensable insurance claim