**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

|  |  |
|---|---|
| T-MOBILE USA INC., a Washington corporation, *Plaintiff-Appellant*, <br><br> v. <br><br> SELECTIVE INSURANCE COMPANY OF AMERICA, *Defendant-Appellee.* | No. 17-35932 <br><br> D.C. No. 2:15-cv-01739-JLR <br><br> CERTIFICATION ORDER TO THE WASHINGTON SUPREME COURT |

Filed November 9, 2018

Before: Susan H. Black,[*] Richard C. Tallman,
and Carlos T. Bea, Circuit Judges.

Order

---

[*] The Honorable Susan H. Black, United States Circuit Judge for the Eleventh Circuit, sitting by designation.

## SUMMARY[**]

### Insurance Law

The panel certified to the Washington Supreme Court the following question:

> Under Washington law, is an insurer bound by representations made by its authorized agent in a certificate of insurance with respect to a party's status as an additional insured under a policy issued by the insurer, when the certificate includes language disclaiming its authority and ability to expand coverage?

### COUNSEL

Michael A. Moore (argued) and Kelly H. Sheridan, Corr Cronin Michelson Baumgardner Fogg & Moore LLP, Seattle, Washington, for Plaintiff-Appellant.

Michael J. Marone (argued), McElroy Deutsch Mulvaney & Carpenter LLP, Morristown, New Jersey; Jeffrey S. Tindal, Betts Patterson & Mines, Seattle, Washington; for Defendant-Appellee.

---

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

**ORDER**

This case concerns an insurance dispute between T-Mobile USA Inc. ("T-Mobile USA") and Selective Insurance Company of America ("Selective"). After T-Mobile USA was sued over damage to a building caused by one of its cellular antennae towers, a dispute arose over whether T-Mobile USA was entitled to coverage as an additional insured under a Selective insurance policy taken out by a contractor that provided services in connection with the tower's construction. After Selective denied coverage, T-Mobile USA filed suit against Selective in state court in Washington. Selective removed the case to federal district court based on diversity jurisdiction. After discovery, the parties filed cross-motions for summary judgment. The district court granted Selective's motion for summary judgment, which resulted in the dismissal of all of T-Mobile USA's claims. T-Mobile USA's subsequent motion for reconsideration was denied. T-Mobile USA appeals the district court's orders granting summary judgment and denying reconsideration.

This Order certifies to the Washington Supreme Court a critical question of state law before us—namely, whether, under Washington law, the rule that an insurer is bound by representations made by its authorized agents overrides the rule that certificates of insurance cannot affect insurance coverage, when the latter rule is echoed by disclaimer language in the certificate at issue.

**I.**

Before addressing the certified question, we summarize the relevant facts.

In 2010, T-Mobile Northeast, LLC ("T-Mobile NE")—a wholly owned regional subsidiary of Appellant T-Mobile USA[1]—entered into a Field Services Agreement ("FSA") with Innovative Engineering, Inc. ("Innovative"). T-Mobile NE engaged Innovative to provide services in connection with the construction of rooftop cellular antennae towers in New York City, which provide cellular telephone coverage for T-Mobile users in the area. The FSA included a provision requiring Innovative to maintain general liability insurance naming T-Mobile NE as an additional insured, and required that Innovative provide T-Mobile NE with certificates of insurance documenting that coverage. Innovative engaged Selective to provide the insurance coverage mandated under the FSA. Selective issued the policy to Innovative, covering the period of January 16, 2012, to January 16, 2013 (the "Policy").

The Policy contained an Additional Insured ("AI") Endorsement that automatically extends "additional insured" status to any entity with whom Innovative enters into a written contract requiring Innovative to add that entity as an additional insured under the Policy (i.e., T-Mobile NE).

In 2012, Selective's authorized agent and insurance broker, the Van Dyk Group, Inc. ("VDG"), issued a Certificate of Insurance ("COI") to *T-Mobile USA*.[2]    The

---

[1] T-Mobile USA wholly owns T-Mobile NE, and the parties do not dispute that T-Mobile NE and T-Mobile USA are separate and distinct legal entities.

[2] Pursuant to a 2007 agreement, Selective delegated authority to VDG to "act on [Selective's] behalf" in various ways, including by "[e]xecuting and issuing binders, policies, and certificates for such insurance."

COI stated that *T-Mobile USA*, as the certificate holder, "is included as an additional insured" under the Policy. But it also stated, in capitalized and bolded text, that the COI "is issued as a matter of information only and confers no rights upon the certificate holder," "does not affirmatively or negatively amend, extend or alter the coverage afforded by" the Policy, and "does not constitute a contract between the issuing insurer(s), authorized representative or producer, and the certificate holder." The COI further warns that "[i]f the certificate holder is an ADDITIONAL INSURED, the policy(ies) must be endorsed" and that "[a] statement on this certificate does not confer rights to the certificate holder in lieu of such endorsement(s)."

In 2005, T-Mobile NE's predecessor, Omnipoint Communications, Inc. ("Omnipoint"), had leased space on the roof of a building in New York City to construct a cell tower, and contracted with Innovative to perform services in connection with this work. Omnipoint assigned this lease to T-Mobile NE in 2009, when T-Mobile NE subsumed Omnipoint. In early 2013, the building owner notified T-Mobile USA and Innovative of alleged property damage that resulted from Innovative's earlier work on the rooftop cell tower.**[3]** Innovative tendered this claim directly to Selective,

---

**[3]** The parties appear to agree that the 2010 FSA is the contract that governs the relationship between T-Mobile USA, Innovative, and Selective in this lawsuit, despite the fact that the work performed by Innovative forming the basis of the underlying lawsuit occurred five years before the FSA was entered into. On appeal, both parties' arguments are premised on interpretations of the 2010 FSA. Both parties have therefore waived any argument that the FSA is not the operative contract for purposes of this appeal. *See Collins v. City of San Diego*, 841 F.2d 337, 339 (9th Cir. 1988) (issues not briefed or argued on appeal are deemed abandoned).

and T-Mobile USA tendered the claim to Innovative with a request that Innovative "immediately notify [its] insurance carrier." Innovative passed that claim on to Selective. In April 2013, the building owner brought suit against T-Mobile USA, Omnipoint, and Innovative in the Southern District of New York.[4]

In July, 2013, Selective acknowledged Innovative's tender and agreed to defend Innovative in the Underlying Lawsuit subject to a reservation of rights letter (the "ROR Letter"). The ROR Letter stated that Selective would defend Innovative, but took the position that a Professional Services Exclusion might ultimately preclude coverage. Later, Selective denied T-Mobile USA's tender in an email vaguely referencing the ROR Letter. When representatives of T-Mobile USA followed up with Selective to question the coverage denial, Selective's coverage counsel stated that Selective would not be defending T-Mobile USA because "T-Mobile does not appear in the Selective Policy named as an insured" and "[i]t does not qualify as an additional insured." (emphasis removed).

T-Mobile USA—which is headquartered in Seattle, Washington—brought suit against Selective in the Superior Court for King County, Washington, on September 15, 2015,

---

[4] *See Va. Props., LLC v. T-Mobile Ne. LLC*, Case No. 2:13-cv-3493 (S.D.N.Y.) (the "Underlying Lawsuit"). After substantial litigation, the building owner's claims were eventually dismissed with prejudice as a result of serious discovery misconduct. *See Va. Props., LLC v. T-Mobile Ne. LLC*, 865 F.3d 110, 113 (2d Cir. 2017). The building owner appealed the dismissal to the Second Circuit, which vacated the dismissal and remanded the action back to the district court. *See id.* at 123. The parties then participated in mediation, and reached a settlement in February 2018. *See Va. Props., LLC v. T-Mobile Ne. LLC*, Case No. 2:13-cv-3493, Dkt. No. 217 (S.D.N.Y. 2018).

asserting claims for breach of contract, declaratory judgment, common law insurance bad faith, common law attorney's fees, and violation of consumer fraud statutes. T-Mobile USA's complaint alleged that T-Mobile USA qualified as an additional insured under the Policy. Selective removed the action to the United States District Court for the Western District of Washington on November 4, 2015, invoking diversity jurisdiction under 28 U.S.C. § 1332.

After discovery, T-Mobile USA moved for partial summary judgment, arguing that the district court should enter judgment in T-Mobile USA's favor on its breach of contract and declaratory judgment claims because, *inter alia*, the 2012 COI issued by Selective's authorized agent states that T-Mobile USA is an additional insured under the Policy. Selective filed a cross-motion for summary judgment along with its opposition to T-Mobile USA's motion, requesting that T-Mobile USA's claims be dismissed in their entirety because, *inter alia*, the 2012 COI could not confer coverage on T-Mobile USA. The district court denied T-Mobile USA's partial motion for summary judgment and granted Selective's motion for summary judgment, ultimately dismissing all of T-Mobile USA's claims.

## II.

We now turn to the issue that is the basis of our certification order.

T-Mobile USA argues that the 2012 COI that VDG issued to T-Mobile USA confers additional-insured status on T-Mobile USA under the Policy. T-Mobile USA *does not* contend that the COI is relevant to *interpreting* the Policy. Rather, T-Mobile USA contends that Selective is bound by VDG's representation in the COI that T-Mobile USA is an additional insured.

There are two competing principles under Washington insurance law that are at loggerheads here. The first is that under Washington law, "an insurance company is bound by all acts, contracts, or representations of its agent, whether general or special, which are within the scope of [the agent's] real or apparent authority." *Chicago Title Ins. Co. v. Wash. State Office of Ins. Comm'r*, 309 P.3d 372, 379 (Wash. 2013) (quoting *Pagni v. N.Y. Life Ins. Co.*, 23 P.2d 6, 16 (Wash. 1933)).

The second is that under Washington law, "the purpose of issuing a [COI] is to inform the recipient thereof that insurance has been obtained." *Postlewait Constr., Inc. v. Great Am. Ins. Cos.*, 720 P.2d 805, 807 (Wash. 1986). Accordingly, under Washington law, a COI is *not* the functional equivalent of an insurance policy, and it therefore *cannot* be used to amend, extend, or alter the coverage provisions of an insurance policy. *See id.*; *Int'l Marine Underwriters v. ABCD Marine, LLC*, 267 P.3d 479, 484 (Wash. Ct. App. 2011).

The Washington Supreme Court has not spoken on how these two legal principles, each pointing to different outcomes, can be reconciled on the facts presented in this case. On the one hand, VDG is Selective's duly authorized agent empowered to issue insurance binders confirming coverage, and therefore Selective should be bound by VDG's representations regarding T-Mobile USA's status as an additional insured under the Policy, which were contained in COIs issued on Selective's behalf.[5] *See Chicago Title Ins.*

---

[5] Selective argues that VDG was not acting within the scope of its authority because, while the agency agreement between Selective and VDG authorizes VDG to issue COIs, it states that the COIs must reflect the then-current terms and limits of the relevant policy. Thus, while

*Co.*, 309 P.3d at 379.  On the other hand, those representations appear in a document that the Washington Supreme Court has unequivocally stated cannot alter or amend the coverage provisions of an insurance policy.  *See Postlewait*, 720 P.2d at 807; *ABCD Marine, LLC*, 267 P.3d at 484.  The disclaimer language contained in the 2012 COI also reflects this latter view on the legal effect of COIs.

When the highest court of a state has not directly spoken on a matter of state law, a federal court sitting in diversity must generally use its "own best judgment in predicting how the state's highest court would decide the case." *Fiorito Bros., Inc. v. Fruehauf Corp.*, 747 F.2d 1309, 1314 (9th Cir. 1984).  In making this prediction, the federal court "must ascertain from all available data what the state law is and apply it." *Estrella v. Brandt*, 682 F.2d 814, 817 (9th Cir. 1982).  "An intermediate state appellate court decision is a 'datum for ascertaining state law which is not to be

---

VDG had actual authority to issue the 2012 COI, Selective argues that VDG had authority to do so only to the extent that its representations were consistent with the exact terms of the Policy.  While the district court did not reach this question, Washington law is clear that "where an agent acts within its authority, the principal cannot excuse itself from vicarious liability through an undisclosed private arrangement that purports to restrict that authority." *Chicago Title Ins. Co.*, 309 P.3d at 379.  VDG issued the 2012 COI pursuant to its delegated authority as Selective's authorized agent, authority which expressly extended to "executing and issuing . . . certificates for [] insurance."  The 2012 COI was signed by VDG as Selective's "Authorized Representative."  VDG's principal also testified that VDG had previously issued COIs for Innovative policies directly to T-Mobile USA on Selective's behalf, and that Selective never objected to VDG's issuance of those COIs (or any other COIs issued by VDG).  There is thus no genuine dispute of material fact over whether VDG acted with at least *apparent authority* in issuing the COI that clearly lists T-Mobile USA as an additional insured under the policy.

disregarded by a federal court unless it is convinced by other persuasive data that the highest court of the state would decide otherwise.'" *Id.* (quoting *West v. Am. Tel. & Tel. Co.*, 311 U.S. 223, 237 (1940)).

As the district court noted, a Washington appellate court considered an issue similar to the one presented here, in *International Marine Underwriters v. ABCD Marine, LLC*, 267 P.3d 479, 484 (Wash. Ct. App. 2011). In *ABCD Marine*, Albert Boogaard was injured by an employee of Northland Services Inc. ("NSI") while Boogaard was providing welding services to NSI on behalf of ABCD Marine, LLC. *Id.* at 481. In the welding services contract between ABCD Marine and NSI, ABCD Marine assumed NSI's liability with respect to ABCD's work. *Id.* The contract also required ABCD to name NSI as an additional insured under ABCD's insurance policy, but this was apparently not done. *Id.* ABCD's insurance broker did, however, issue COIs to two companies related to NSI, noting that *they* were additional insureds under ABCD's policy. *Id.* at 484. After Boogard was injured, he sued the insurance company for denying his claim, arguing that the COIs made NSI and its related companies additional insureds under ABCD's policy. *Id.* at 481–84. The superior court granted summary judgment to the insurer, and Boogaard appealed. *Id.* at 482. The Washington Court of Appeals was tasked with deciding whether the two companies that had been issued COIs constituted additional insureds based on the specific representations in the COIs, notwithstanding the fact that they did not otherwise qualify as additional insureds under the relevant policy. *Id.* The Court of Appeals held that the two companies were *not* additional insureds, citing to *Postlewait* for the proposition that COIs are issued only to inform the recipient that insurance has been obtained, and that they confer no additional rights on the holder. *Id.* at 484.

The Washington Court of Appeals reiterated that under Washington law, COIs "[can]not amend, extend or alter the coverage afforded by the polic[y]." *Id.*

The district court in the instant case cited to *ABCD Marine* as evidence that the Washington Supreme Court would likely hold that VDG's COIs similarly *do not* confer additional insured status on T-Mobile USA, despite the representations in the COIs.  In *ABCD Marine*, however, the insurance broker that issued the COIs was *not* an authorized agent of the *insurer*, but rather was the *insured*'s own agent. 267 P.3d at 484.  Therefore, unlike the instant case, *ABCD Marine* did not present a question regarding how agency principles interact with the legal effect of COIs under Washington insurance law.

Since no Washington court has addressed this important intersection of two disparate principles of Washington insurance law when they conflict, it is difficult to conclude with any certainty whether the Washington  rule on the legal effect of COIs trumps the Washington  rule on the legal effect of coverage representations made by an insurer's authorized agent.

### III.

Although the parties contentiously argue over an array of issues, a potentially dispositive issue in this case is whether Selective is bound by VDG's representation in the 2012 COI that T-Mobile USA was an additional insured under the Policy.  Washington law conflicts on this issue, and its resolution may entirely dispose of T-Mobile USA's appeal. Further, this issue potentially affects an untold number of Washington citizens and businesses who have been issued similar certificates of insurance, and it is therefore a matter of important public policy.  *See Kremen v. Cohen*, 325 F.3d

1035, 1037 (9th Cir. 2003) ("The certification procedure is reserved for state law questions that present significant issues, including those with important public policy ramifications, and that have not yet been resolved by the state courts.").

Because this critical question of state law is not settled, we have concluded that the appropriate course of action is to certify this issue to the Washington Supreme Court, and respectfully request that it provide the answer.[6] *See Lehman Bros. v. Schein*, 416 U.S. 386, 391 (1974) (noting that federal certification of state law questions "helps build a cooperative judicial federalism," and is "particularly appropriate" for novel or unsettled questions of state law). If the Washington Supreme Court concludes that Selective is bound by the additional insured representation in the 2012 COI, we will reverse the district court's orders granting summary judgment and dismissal on that threshold basis, and remand for further proceedings.

## IV.

We respectfully certify to the Washington Supreme Court the following question:

> Under Washington law, is an insurer bound
> by representations made by its authorized

---

[6] While the parties did not request that the district court certify this question below, we have the authority to certify a question sua sponte. *See Parents Involved in Cmty. Sch. v. Seattle Sch. Dist.*, 294 F.3d 1085, 1086 (9th Cir. 2002) ("[W]e have an obligation to consider whether novel state-law questions should be certified—and we have been admonished in the past for failing to do so.") (citation omitted); Wash. Rev. Code § 2.60.030(1) ("Certificate procedure may be invoked by a federal court upon its own motion . . . .").

> agent in a certificate of insurance with respect to a party's status as an additional insured under a policy issued by the insurer, when the certificate includes language disclaiming its authority and ability to expand coverage?

We do not intend our framing of this question to restrict the Washington Supreme Court's consideration of any issues that it determines are relevant. The Washington Supreme Court may, in its discretion, reformulate the question. *Broad v. Mannesmann Anlagenbau AG*, 196 F.3d 1075, 1076 (9th Cir. 1999). If the Washington Supreme Court accepts review of the certified question, we designate appellant T-Mobile USA as the party to file the first brief pursuant to Washington Rule of Appellate Procedure ("WRAP") 16.16(e)(1).

The clerk of our court is hereby ordered to transmit forthwith to the Washington Supreme Court, under official seal of the United States Court of Appeals for the Ninth Circuit, a copy of this order and all relevant briefs and excerpts of record pursuant to Washington Revised Code Sections 2.60.010 through 2.60.030 and WRAP 16.16. The record contains all matters in the pending case deemed material for consideration of the local law question certified for answer.

Further proceedings in our court are **stayed** pending the Washington Supreme Court's decision whether it will accept review, and if so, receipt of the answer to the certified question. This case is **withdrawn from submission** and the clerk is directed to close this docket administratively, pending further order from this court. When the Washington Supreme Court decides whether to accept the certified question (or orders briefing on the question), the parties shall

file a joint report informing us of the decision. The parties shall also file a joint status report notifying us when briefing has been completed, and when a date is set for oral argument before the Washington Supreme Court. The parties shall finally file a joint status report every six months after the date that the Washington Supreme Court accepts the certified question (or orders briefing thereon), or more frequently if circumstances warrant.

**QUESTION CERTIFIED; SUBMISSION WITHDRAWN and PROCEEDINGS STAYED.**

**FOR THE COURT:**

Sidney R. Thomas
Chief Judge
Ninth Circuit Court of Appeals