

IN CLERKS OFFICE
SUPREME COURT, STATE OF WASHINGTON

DATE OCT 1 0 2019

Fairhurst, CJ

CHIEF JUSTICE

This opinion was
filed for record
at 8am on Oct 10 2019

Susan L. Carlson
Supreme Court Clerk

# IN THE SUPREME COURT OF THE STATE OF WASHINGTON

| | |
|---|---|
| CERTIFICATION FROM THE UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT IN<br><br>T-MOBILE USA INC., a Washington corporation,<br><br>Plaintiff-Appellant,<br><br>v.<br><br>SELECTIVE INSURANCE COMPANY OF AMERICA,<br><br>Defendant-Appellee. | No. 96500-5<br><br>EN BANC<br><br>Filed OCT 1 0 2019 |

GORDON McCLOUD, J.—The Ninth Circuit has asked this court whether an insurance company is bound by its agent's written representation—made in a certificate of insurance—that a particular corporation is an additional insured under a given policy. The question arises in a case where: (1) the Ninth Circuit has already ruled that the agent acted with apparent authority, but (2) that agent's representation turned out to be inconsistent with the policy and (3) the certificate included additional text broadly disclaiming the certificate's ability to "amend, extend or alter the coverage afforded by" the policy.

Under this state's law, the answer is yes: an insurance company is bound by the representation of its agent in those circumstances. Otherwise, an insurance company's representations would be meaningless and it could mislead without consequence.

## FACTUAL AND PROCEDURAL HISTORY

At the heart of this case are two T-Mobiles: T-Mobile <u>USA</u> and T-Mobile <u>Northeast (T-Mobile NE)</u>. They are distinct legal entities.[1] *T-Mobile USA, Inc. v. Selective Ins. Co. of Am.*, 908 F.3d 581, 583 n.1 (9th Cir. 2018).

T-Mobile NE wanted to construct a cell phone tower on a rooftop in New York City. *Id.* at 583-84. It engaged the services of a contractor to help it do so. *Id.*; *see also* 3 Excerpts of Record (ER) at 499-516 (agreement). The contract between T-Mobile NE and the contractor required the contractor to obtain a general liability insurance policy, to annually provide T-Mobile NE "with certificates of insurance evidencing [that policy's] coverage," and to name T-Mobile NE as an additional insured under the policy. 3 ER at 504-05. T-Mobile

---

[1] "T-Mobile Northeast LLC . . . is a limited liability company organized under the laws of the State of Delaware. T-Mobile [USA] is the sole member of T-Mobile NE, which is a wholly-owned subsidiary of T-Mobile [USA]." 4 Excerpts of Record at 817-18 (declaration of T-Mobile USA's employee); *see also id.* at 821-24 (T-Mobile NE's formation documents).

2

USA was not a party to the contract, *id.* at 503, but was nonetheless aware of it and approved the contract as to form, *id.* at 516.

The contractor obtained the required insurance policy from Selective Insurance Company of America. *T-Mobile USA*, 908 F.3d at 583; *see also* 3 ER at 518-639 (policy). The policy was—and remains—a claims-made policy. 3 ER at 532. It provided that a third party would automatically become an additional insured under the policy if the contractor and the third party entered into their own contract and that contract required the contractor to add the third party to its insurance policy as an additional insured. *T-Mobile USA*, 908 F.3d at 583. T-Mobile NE therefore became an additional insured under the policy by virtue of its contract with the contractor. T-Mobile NE and the contractor worked together to build the cell phone tower on the New York City rooftop. *Id.* at 584.

Because T-Mobile USA did not have a contract with the contractor, it did not automatically become an additional insured under the policy. Nonetheless, over the course of approximately seven years, Selective's agent issued a series of certificates of insurance, including the one underlying this dispute, to "T-Mobile USA Inc., its Subsidiaries and Affiliates" that stated that those entities were "included as an additional insured [under the policy] with respect to" certain areas of coverage. 2 ER at 132 (certificate at issue); *see also* 3 ER at 642-52; 4 ER at

833 (other certificates). The agent signed those certificates as Selective's

"'Authorized Representative.'" 4 ER at 827.

The agent explained that it "began issuing the T-Mobile Additional Insured

[certificates of insurance] because [the contractor] informed us that its agreements

with T-Mobile required that T-Mobile be named as an additional insured under

[the contractor's] insurance policies and that T-Mobile qualified as an additional

insured per the standard terms of Selective's policies for that reason." *Id.*

Selective never objected to the agent's issuance of the certificates. *Id.* at 826

(declaration of agent's principal).

Given those facts, the Ninth Circuit held that the agent acted with apparent

authority in issuing the certificate at issue, which "clearly lists T-Mobile USA as

an additional insured under the policy."[2] *T-Mobile USA*, 908 F.3d at 586 n.5.

But the certificate was issued on an industry-standard form and included

preprinted industry-standard disclaimers. 2 ER at 132; Br. of Amicus Curiae Am.

Prop. & [Cas.] Ins. Ass'n at 4 (explaining this). It stated in bold capital letters that

the certificate "is issued as a matter of information only and confers no rights upon

the certificate holder," "does not affirmatively or negatively amend, extend or alter

---

[2] The Ninth Circuit left unresolved whether the agent was acting with actual authority. *T-Mobile USA*, 908 F.3d at 586 n.5.

the coverage afforded by the" insurance policy, and "does not constitute a contract between the issuing insurer(s), authorized representative or producer, and the certificate holder." 2 ER at 132 (formatting omitted). It also stated in bold, "If the certificate holder is an ADDITIONAL INSURED, the policy(ies) must be endorsed. . . . A statement on this certificate does not confer rights to the certificate holder in lieu of such endorsement(s)." *Id.* (boldface omitted).

Eventually, the owner of the New York City rooftop on which T-Mobile NE and the contractor had constructed the cell phone tower sued the contractor and T-Mobile in federal district court in New York for damages associated with the construction. *T-Mobile USA*, 908 F.3d at 584 & n.4. But the owner sued T-Mobile USA, *not* T-Mobile NE. *Id.*

T-Mobile USA and the contractor each tendered the building owner's claim to Selective. *Id.* at 584. Selective accepted the contractor's tender but rejected T-Mobile USA's tender. *Id.* at 584-85.

Following T-Mobile USA's motion for summary judgment in the New York litigation, the building owner amended its complaint, naming T-Mobile NE (and dropping T-Mobile USA) as the defendant. 4 ER at 678. Because Selective had not accepted T-Mobile USA's tender, though, T-Mobile USA incurred expenses defending itself up to that point of the New York litigation.

T-Mobile USA, which is headquartered in Washington, sued Selective in King County Superior Court. *T-Mobile USA*, 908 F.3d at 585. It "assert[ed] claims for breach of contract, declaratory judgment, common law insurance bad faith, common law attorney's fees, and violation of consumer fraud statutes." *Id.* All of those claims were based on the fact that Selective failed to recognize T-Mobile USA as an additional insured. *Id.*

Selective, which is headquartered in New Jersey, removed the case to federal district court.[3] *Id.*

After discovery, Selective moved for summary judgment, "requesting that T-Mobile USA's claims be dismissed in their entirety because . . . the 2012 [certificate of insurance] could not confer coverage on T-Mobile USA." *Id.* The district court granted the motion and dismissed all of T-Mobile USA's claims. *Id.*

T-Mobile USA appealed on several grounds. The Ninth Circuit certified only the following question to this court:

> "Under Washington law, is an insurer bound by representations made by its authorized agent in a certificate of insurance with respect

---

[3] Selective then filed several motions. The district court denied the motion to transfer venue to New Jersey, 1 ER at 96 (order), and denied the motion to apply New Jersey law to the breach of contract claim, *id.* at 90-91. But that court granted the motion to apply New Jersey law to the common law, bad faith, and statutory consumer fraud claims. *Id.* at 96. The parties did not challenge those rulings on this appeal. Br. of Pl.-Appellant at 1-3 (9th Cir. Docket No. 17-35932 (2018)); Appellee's Responsive Br. at 1 (9th Cir. Docket No. 17-35932 (2018)).

to a party's status as an additional insured under a policy issued by the insurer, when the certificate includes language disclaiming its authority and ability to expand coverage?"

*Id.* at 588. The Ninth Circuit noted that "T-Mobile USA *does not* contend that the [certificate of insurance] is relevant to *interpreting* the Policy. Rather, T-Mobile USA contends that Selective is bound by [the agent's] representation in the [certificate of insurance] that T-Mobile USA is an additional insured." *Id.* at 585.

DISCUSSION

A certified question presents a question of law. RCW 2.60.020; RAP 16.16. This court "consider[s] the legal issues presented based on the certified record provided by the federal court." *Wright v. Lyft, Inc.*, 189 Wn.2d 718, 722, 406 P.3d 1149 (2017) (citing *Bradburn v. N. Cent. Reg'l Library Dist.*, 168 Wn.2d 789, 799, 231 P.3d 166 (2010)).

I.     Selective Is Bound by the Representations of Its Agent

The general rule in Washington is that

"an insurance company is bound by all acts, contracts, or representations of its agent, whether general or special, which are within the scope of [the agent's] real or apparent authority notwithstanding they are in violation of private instructions or limitations upon [the agent's] authority, of which the person dealing with [the agent], acting in good faith, has neither actual nor constructive knowledge."

7

*Pagni v. N.Y. Life Ins. Co.*, 173 Wash. 322, 349-50, 23 P.2d 6 (1933) (quoting 32 C.J. *Insurance* § 140, at 1063 (1923)); *see also Chi. Title Ins. Co. v. Office of Ins. Comm'r*, 178 Wn.2d 120, 136, 309 P.3d 372 (2013).

The Ninth Circuit made clear that Selective is an insurance company, that it had an agent, and that the agent acted with apparent authority when it issued the certificate to T-Mobile USA. *T-Mobile USA*, 908 F.3d at 586 n.5. In these circumstances, under Washington law, Selective is bound by the representations its agent made in the certificate of insurance.

Selective argues that its agent's representation should not bind it because T-Mobile USA's alleged reliance on the representation, *see* 2 ER at 121-24, was unreasonable. The reliance was unreasonable, according to Selective, because T-Mobile USA knew that it was not a party to a contract with the contractor—and therefore not an additional insured under the contractor's policy. As Selective correctly notes, T-Mobile USA approved T-Mobile NE's contract with the contractor. That contract explicitly stated that T-Mobile USA was not a party to the contract.

But the Ninth Circuit has already ruled that Selective's agent acted with apparent authority. That ruling conclusively resolves this argument. Apparent authority "depend[s] upon objective manifestations made by the principal." *King*

*v. Riveland*, 125 Wn.2d 500, 507, 886 P.2d 160 (1994) (citing *Smith v. Hansen,*

*Hansen & Johnson, Inc.*, 63 Wn. App. 355, 363, 818 P.2d 1127 (1991)). Those

objective manifestations by the principal "must cause the [third party] to actually,

or subjectively believe, that the agent has authority to act for the principal" and *"be*

*such that the [third party's] actual, subjective belief is objectively reasonable." Id.*

(emphasis added) (citing *Smith*, 63 Wn. App. at 364). Thus, in ruling that the

agent acted with apparent authority, the Ninth Circuit necessarily decided that

T-Mobile USA's belief that the agent was authorized to issue a certificate naming

it as an additional insured was "objectively reasonable."[4] T-Mobile USA's

objectively reasonable belief that the agent had authority to issue the certificate

necessarily makes its reliance on that certificate reasonable.

---

[4] As noted, there is a factual basis for the Ninth Circuit's determination. The Ninth Circuit pointed out that Selective appointed the agent as its agent and that the agent signed the certificates of insurance "as Selective's 'Authorized Representative.' [The agent] also testified that [the agent] had previously issued [certificates of insurance] for [the contractor's] policies directly to T-Mobile USA on Selective's behalf, and that Selective never objected to [the agent's] issuance of those [certificates]." *T-Mobile USA*, 908 F.3d at 586 n.5. Additionally, as T-Mobile USA points out, one of Selective's employees appears to have admitted that it would have been reasonable for T-Mobile USA "to understand that it was an additional insured under the very Selective policy at issue in this case." 5 ER at 1021.

Accordingly, under the general rule, Selective is bound by the representations that its agent made to T-Mobile USA when the agent issued the certificate of insurance.

## II.    The Certificate's General Disclaimers Are Not Effective

We therefore turn to the certificate of insurance to determine what promises Selective, through its authorized agent's representations, made. That certificate of insurance actually contains contradictory representations. On the one hand, it says that T-Mobile USA was an additional insured under the policy, i.e., that the policy covers T-Mobile USA. On the other hand, it says that nothing in the certificate changes the policy—and the policy does not cover T-Mobile USA. So which of those contradictory representations binds Selective?

Selective argues that the preprinted disclaimers made all the specific, written-in, additional statements about coverage completely ineffective. It points out that the certificate stated that it was issued as a matter of "information only." Def.-Appellee, Selective Ins. Co. of Am.'s, Answering Br. at 46. And as amicus notes, "The specific form used here, the ACORD[5] 25, is a [certificate of insurance] that was 'developed as a *non-binding* form issued to third parties as

---

[5] The Association for Cooperative Operations Research and Development.

evidence of insurance of the named insureds.'" Br. of Amicus Curiae Am. Prop. & [Cas.] Ins. Ass'n at 4.

T-Mobile USA counters that the preprinted disclaimers were ineffective because they were general boilerplate, whereas the additional insured statement had been specifically written into the certificate. Opening Br. of Pl.-Appellant T-Mobile USA, Inc. at 29.

T-Mobile USA is correct. A basic rule of textual interpretation is that the specific prevails over the general. *Residents Opposed to Kittitas Turbines v. State Energy Facility Site Evaluation Council*, 165 Wn.2d 275, 309, 197 P.3d 1153 (2008). We follow this rule when we interpret statutes and contracts, *see, e.g.*, *Ohio Sec. Ins. Co. v. AXIS Ins. Co.*, 190 Wn.2d 348, 353, 413 P.3d 1028 (2018) (statutes); *McGary v. Westlake Inv'rs*, 99 Wn.2d 280, 285-86, 661 P.2d 971 (1983) (contracts), and for that reason, we follow this rule when we interpret certificates of insurance. As this court has explained, we interpret "the language of the certificate in a manner understandable to the average person." *Fittro v. Lincoln Nat'l Life Ins. Co.*, 111 Wn.2d 46, 50, 757 P.2d 1374 (1988) (citing *State Farm Gen. Ins. Co. v. Emerson*, 102 Wn.2d 477, 687 P.2d 1139 (1984)). The average person's "'[a]ttention and understanding are likely to be in better focus when language is specific or exact.'" *Foote v. Viking Ins. Co. of Wis.*, 57 Wn. App.

11

831, 834-35, 790 P.2d 659 (1990) (quoting RESTATEMENT (SECOND) OF

CONTRACTS § 203 cmt. e (AM. LAW INST. 1981)).

Here, the preprinted disclaimers are general in nature. They purport to

disclaim virtually every bit of information provided by the certificate. By contrast,

the additional insured statement that the agent wrote in specifically refers to certain

areas of policy coverage and makes a discrete representation that "T-Mobile USA

Inc., its Subsidiaries[,] and Affiliates" "is included as an additional insured." 2

ER at 132. This specific written-in additional insured statement thus prevails over

the preprinted general disclaimers.

That conclusion respects the specific purpose for which the certificate was

issued: to inform T-Mobile USA, its subsidiaries, and its affiliates that they are

additional insureds under the policy.[6] Giving effect to the disclaimers, by contrast,

would render issuance of the certificate—and the specific representation within

it—pointless. Contrary to Selective's argument, the certificate would have no

---

[6] As amici note, this is not an uncommon arrangement. Certificates of insurance play an important role in facilitating commerce because they inform certificate holders, who are frequently outsiders to the relationship between the insurance company and its primary insured, that an insurance relationship exists—whether that is between the insurer and its primary insured or between the insurer and an additional insured. Amicus Curiae Br. of Associated Gen. Contractors of Wash. at 2-3; *cf.* Br. of Amicus Curiae Am. Prop. & [Cas.] Ins. Ass'n at 4 ("Under normal circumstances, [certificates of insurance] are issued as a service to policyholders who need to demonstrate the existence of insurance coverage to a third party.").

informational value at all. All it would do is "'set a trap'" for the certificate holder.[7] *Fittro*, 111 Wn.2d at 53 (quoting *Riske v. Nat'l Cas. Co.*, 268 Wis. 199, 207, 67 N.W.2d 385 (1954)).[8]

III. Representing a Fact in a Certificate of Insurance Does Not Render the Representation Meaningless

The Ninth Circuit was unsure whether the line of decisions discussed above governed the outcome of this case, in light of the fact that this court has also stated, "[T]he purpose of issuing a certificate of insurance is to inform the recipient thereof that insurance has been obtained; the certificate itself, however, is not the equivalent of an insurance policy." *Postlewait Constr., Inc. v. Great Am. Ins. Co.*, 106 Wn.2d 96, 100-01 & n.7, 720 P.2d 805 (1986) (citing cases).

The quoted statement from *Postlewait* is accurate. But it addressed a different situation. In *Postlewait*, a crane owner leased its cranes to a construction company. 106 Wn.2d at 97. The lease required the construction company to obtain insurance for the cranes, and the construction company did so. *Id.* at 97-98.

---

[7] To be clear, we do not hold that all disclaimers are ineffective. We hold that the disclaimers at issue here are ineffective because they completely and absolutely contradict the other, more specific promises in that same certificate.

[8] We recognize that *Fittro* posed a different question that arose in the context of a different statutory scheme. *See* 111 Wn.2d at 52 (stating that its holding applies "when the certificate is issued under statutory mandate and is the only document the insured is likely to see").

13

The construction company's policy did not, however, cover the crane owner's losses. *Id.* at 98. It covered the construction company's losses. *Id.* at 100.

Critically, the certificate of insurance did not even purport to cover the crane owner's losses either. The construction company's broker—who was not an agent of the insurance company—provided two certificates of insurance to the crane owner. Both certificates stated that the construction company had obtained coverage for the cranes, *id.* at 98, 100; neither certificate represented that the crane owner was an additional insured. Nevertheless, the crane owner cancelled its own insurance policy covering the cranes. *Id.* at 98.

"Then later yet, [one of the cranes] was damaged in two separate arson fires while it was in the [construction company's] care." *Id.* The crane owner "sought payment for the damage directly from the insurer." *Id.* When the crane owner and the insurance company were unable to agree, the crane owner sued. *Id.* The insurance company defended on the ground that the crane owner was not an insured or a third-party beneficiary to the policy. *Id.*

We agreed with the insurance company. We held that the crane owner did not have an action against the insurance company because it was not an additional insured, a loss payee, or an intended third-party beneficiary. *Id.* at 99. We based this decision on the fact that neither the policy itself nor the certificates of

14

insurance conferred such status on the crane owner. In that context, we stated that a certificate of insurance "'is not, and does not purport to be, a policy, but states that a policy covering the goods is in existence.'" *Id.* at 100 (quoting *Postlewait Constr., Inc. v. Great Am. Ins. Cos.*, 41 Wn. App. 763, 767, 706 P.2d 636 (1985)). We agreed with other courts that "the purpose of issuing a certificate of insurance is to inform the recipient thereof that insurance has been obtained; the certificate itself, however, is not the equivalent of an insurance policy." *Id.* at 100-01 & n.7 (citing cases).

Selective relies on those observations. But they don't apply here. They applied in *Postlewait* because the insurance company's agent had no role in the representations at all, the certificates of insurance contained no representation about the status of the certificate holder (the crane owner), and the certificates contained only a representation of the insured status of another entity (the construction company). This case, in contrast, is about an agent's representation— which the agent happened to make in a certificate of insurance—that explicitly names T-Mobile USA as the additional insured.

Our decision in *Postlewait* is therefore completely consistent with our decision today.[9] An agent's authorized or apparently authorized representation is a representation, whether it is transmitted via letter, e-mail, certificate of insurance, or something else.[10]

IV. Public Policy Supports Application of the Rule That Selective Is Bound by Its Agent's Representation

Amicus American Property and Casualty Insurance Association argues that holding Selective to the representation of its agent would conflict with public policy. "In essence, this would permit the [certificate of insurance] to completely supplant the policy terms." Br. of Amicus Curiae Am. Prop. & [Cas.] Ins. Ass'n at 14. "If fundamental contract certainty can be so easily undermined, individual issuers will presumably be forced to consider declining to authorize the use of any

---

[9] The other decision cited by the Ninth Circuit, *International Marine Underwriters v. ABCD Marine, LLC*, 165 Wn. App. 223, 267 P.3d 479 (2011), *aff'd* 179 Wn.2d 274, 313 P.3d 395 (2013) (plurality opinion), is similarly distinguishable. In that case, the Court of Appeals held that two certificates of insurance did not confer additional insured status on a particular corporation, NSI (Northland Services Inc.). 165 Wn. App. at 232-33. But the certificates at issue had been issued to two different corporations, Naknek and Northland Holdings; contained no representations about NSI; and were not issued by the insurance company or its agent. *Id.*; *see also Int'l Marine*, 179 Wn.2d at 277 (describing the certificates).

[10] To be sure, all the information contained within the transmittal document, along with how that information is arranged within the transmittal document, can affect the interpretation of what was actually represented to the party receiving the document. *See* Part II, *supra.*

16

[certificates of insurance], which would represent an unfortunate—and unnecessary—end to the use of a tool that many stakeholders find useful when appropriately limited to its intended use as an 'information-only' communication that clearly explains that status." *Id.* at 15.

The public policy of the State of Washington actually compels the opposite conclusion. Insurance companies act through, and are bound by, the representations of their agents made with actual or apparent authority. Enforcing those authorized representations has a modest aim: it provides the principal with an additional incentive to ensure that the agent's representations—made in person, on the phone, or in writing—are true. Even though American Property and Casualty Insurance Association frames its argument in terms of certificates of insurance, the argument is actually an attack on the rule that an insurance company is bound by the acts and representations of its agent. But this court adopted that rule in 1933 because it was good public policy then, and we hold that it remains good policy now.[11] *See Pagni*, 173 Wash. at 349-53.[12]

---

[11] Because our state's long-standing public policy favors holding Selective to the authoritative representation of its agent, we find Selective and American Property and Casualty Insurance Association's numerous citations to out-of-state authority unpersuasive in this case.

[12] If this result injures Selective, which must now treat T-Mobile USA as an insured even though its policy does not, that problem "should be addressed between the agent and the principal." *Sumitomo Marine & Fire Ins. Co. of Am. v. So. Guar. Ins. Co.*

17

CONCLUSION

We answer the Ninth Circuit's certified question this way: an insurance company's agent who makes an authoritative representation binds the insurance company, even when that specific representation is transmitted via a certificate of insurance and accompanied by general disclaimers.

---

*of Ga.*, 337 F. Supp. 2d 1339, 1350 (N. D. Ga. 2004) (citing *Hutsell v. U.S. Life Title Ins. Co.*, 157 Ga. App. 845, 847, 278 S.E.2d 730 (1981)).

_[signature]_ Gordon McCloud, J.

WE CONCUR:

_[signature]_ Fairhurst, C.J.

_[signature]_ Stephens, J.

_[signature]_ Wiggins, J.

_[signature]_ González, J.

_[signature]_ Yu, J.

*T-Mobile USA, Inc. v. Selective Ins. Co. of Am.*

No. 96500-5

MADSEN, J. (dissenting)—It is undisputed that T-Mobile USA, Inc. was not covered as an additional insured under any insurance policy from Selective Insurance Company of America. *See, e.g.*, 3 Excerpts of Record (ER) at 503 ("Contractor expressly acknowledges and agrees that T-Mobile USA, Inc. is not a party to this Agreement."), 518-639 (insurance policy). To overcome this lack of coverage, T-Mobile USA relies on certificates of insurance and an insurance agent's statements to the contrary—statements indicating that T-Mobile USA was insured. 2 ER at 132; 3 ER at 642-52. T-Mobile USA contends, and the majority agrees, that these certificates and the agent's statements are binding on Selective Insurance, requiring it to cover T-Mobile USA. I disagree.

Certificates of insurance cannot supplant a policy that does not award coverage. Certificates are tools of the insurance trade. They are informational documents only. *E.g.*, *Boseman v. Conn. Gen. Life Ins. Co.*, 301 U.S. 196, 203, 57 S. Ct. 686, 81 L. Ed. 1036 (1937) (stating that a certificate of insurance "served merely as evidence of the insurance of the employee"); *Postlewait Constr., Inc. v. Great Am. Ins. Cos.*, 106 Wn.2d 96, 100-01, 720 P.2d 805 (1986) ("the purpose of issuing a certificate of insurance is to

inform the recipient thereof that insurance has been obtained").[1] Certificates do not confer insurance *coverage*—which is found in the insurance policy itself—nor do they create a contractual relationship between an insurer and an additional insured. *Atlas Assur. Co. v. Harper, Robinson Shipping Co.*, 508 F.2d 1381, 1386 (9th Cir. 1975) ("[A certificate] 'is not, and does not purport to be, a policy, but states that a policy covering goods is in existence.'"); *Postlewait*, 106 Wn.2d at 101 ("the certificate itself, however, is not the equivalent of an insurance policy."); *see also* 3 COUCH ON INSURANCE § 40:31 (3d ed.) ("Generally, a certificate of insurance . . . cannot create a contractual relationship between an insurer and an alleged additional insured if the policy itself does not provide for such a relationship."). Moreover, the certificates at issue here contained standard disclaimer language conferring "no rights upon the certificate holder" or amending, extending, or altering the coverage. 2 ER at 132; 4 ER at 831. In other words, because the insurance policy did not recognize T-Mobile USA as an additional insured, the certificates of insurance have no effect on T-Mobile USA's coverage.[2]

---

[1] Our sister court in New Hampshire has gone as far as to characterize a certificate as "a worthless document" that "does no more than certify that insurance existed on the day the certificate was issued." *Bradley Real Estate Tr. v. Plummer & Rowe Ins. Agency, Inc.*, 609 A.2d 1233, 1235 (1992).

[2] This is the prevailing view of courts that have considered the issue. *E.g.*, *Mountain Fuel Supply v. Reliance Ins. Co.*, 933 F.2d 882, 556 (10th Cir. 1991) (the "majority view is that where a certificate of insurance . . . expressly indicates it is not to alter the coverage of the underlying policy, the requisite intent is not shown and the certificate will not effect a change in the policy"); Steven Plitt, *The Impact of Certificates of Insurance in Determining the Availability of Coverage for Additional Insureds*, 30 INS. LITIG. REP. 461 (2008) ("[A] certificate of insurance is not part of the policy—if it states that there is coverage but the policy does not, the policy controls. This is the majority view."). Courts have generally held that certificates do not control over insurance policies for two reasons: (1) certificates are informational only and show evidence that insurance exits and (2) disclaimers contained in most certificates plainly state that

Accordingly, I disagree with the majority that T-Mobile USA's certificates of insurance take precedence over an insurance policy that simply does not cover T-Mobile USA. Nor would I apply equitable estoppel principles in this case. *Robinson v. City of Seattle*, 119 Wn.2d 34, 82, 830 P.2d 318 (1992). Equitable estoppel requires (1) a party's admission, statement, or act inconsistent with its later claim, (2) reasonable reliance on that act by another party, and (3) injury to the relying party. *Id.* Assuming the insurance agent here acted as an agent for Selective Insurance, T-Mobile USA did not "reasonably" rely on the certificates. The record indicates T-Mobile USA believed the certificates provided coverage based on one declaration. 2 ER at 121-24 (declaration of insurance and claims manager Lisa Bauer). The certificates' disclaimers clearly stated the documents did not confer any "rights" or "amend, extend or alter" the terms of the policy. *E.g., Ala. Elec. Coop., Inc. v. Bailey's Constr. Co.*, 950 So. 2d 280, 285-86 (Ala. 2006) (holding it unreasonable to rely on a certificate of insurance to confer coverage based on its disclaimer language). And T-Mobile USA is a sophisticated business entity with extensive experience dealing with insurance matters.

---

the terms of the insurance policy control. Plitt, *supra*. "As a general rule, where a certificate or endorsement states expressly that it is subject to the terms and conditions of the policy, the language of the policy controls." *Taylor v. Kinsella*, 742 F.2d 709, 711 (2d Cir. 1984) (citing cases in support); *see also Boseman*, 301 U.S. at 203 ("[T]he certificate is not a part of the contract of, or necessary to, the insurance. . . . It served merely as evidence of the insurance."); *Erie Ins. Exch. v. Gosnell*, 246 Md. 724, 731, 230 A.2d 467 (1967) ("If there is a conflict between the terms of the policy and the statements in the certification, the terms of the policy control.").

3

This is not to say that equitable estoppel could never be applicable when a certificate is alleged to provide more coverage than an underlying policy where a party can show reasonable reliance. That is not the case here.

Here, T-Mobile USA seeks something it was never entitled to—insurance coverage. As a sophisticated business entity, T-Mobile USA cannot be said to have reasonably relied on certificates of insurance proclaiming coverage it did not contract for or purchase. Awarding coverage to T-Mobile USA now would be a windfall for the company and a misuse of the tool of certificates of insurance.

Under a different set of facts, a party might have a complaint for coverage. When a certificate of insurance reflects coverage and an agent of the insurer somehow (either negligently or intentionally) failed to secure the insurance and the party obligated to provide insurance is sued for failing to do so, that party is not without recourse. In the present case, not only did T-Mobile USA have no relationship with Selective Insurance, it had no right against the insurance purchaser because there was never any agreement that the insurance would cover T-Mobile USA.

Because I disagree with the majority that a certificate of insurance takes precedence over an insurance policy and I do not find equitable estoppel principles applicable, I would answer no to the certified question. With these considerations in mind, I respectfully dissent.

4

Madsen, J.

Owens, J.